J-S16024-19

2019 PA Super 124

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEREMY TODD HARLAN | : | |
| | : | |
| Appellant | : | No. 1592 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 24, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0003153-2017

BEFORE: OTT, J., MURRAY, J., and MUSMANNO, J.

OPINION BY MURRAY, J.: **FILED APRIL 23, 2019**

Jeremy Todd Harlan (Appellant) appeals *pro se*[1] from the judgment of sentence imposed after the trial court convicted him of crimes committed under The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780-101 to 780-144, and The Uniform Firearms Act, 18 Pa.C.S.A. §§ 6101-

---

[1] Appellant was represented by counsel during the trial court proceedings and at sentencing on August 24, 2018. On August 31, 2018, Appellant filed a petition to proceed *pro se* on appeal. On September 27, 2018, the trial court conducted a hearing pursuant to **Commonwealth v. Grazier** 713 A.2d 81 (Pa. 1998), after which it entered an order granting Appellant's request based on a finding that Appellant's decision to proceed *pro se* was "knowing and voluntary." Order, 9/27/18. The court also granted Appellant's trial counsel "leave to withdraw as counsel of record." **Id.**

6128.[2]  On appeal, Appellant challenges the denial of his suppression motion.

After careful consideration, we affirm.

Appellant summarizes his argument as follows:

> The affidavit of probable cause contained hearsay and inadmissible and unsubstantiated double-hearsay with no eyewitnesses, no named or reliable and trustworthy informants; provided no factual basis from which to determine when the unnamed informants allegedly obtained their information; and was insufficiently corroborated both by the informants and by an independent police investigation.  Based on these factual defects, the affidavit of probable cause was insufficient to justify a probable cause determination and the issuance of a search warrant.

Appellant's Brief at 4.

The Commonwealth counters that "search warrants are able to rely on hearsay to establish probable cause as long as the hearsay is reliable," and "the information between the two anonymous sources was corroborated by each other as well as with [an] independent police investigation." Commonwealth Brief at 6.  The Commonwealth further refutes Appellant's assertion of "stale" information, stating that "information was given using the present tense and the illegal activity of growing marijuana is not something that happens quickly." *Id.*

_____

[2] Appellant was convicted of two counts of possession of a controlled substance with intent to deliver and one count of manufacturing a controlled substance, 35 P.S. § 780-113(a)(30); one count of persons not to possess a firearm, 18 Pa.C.S.A. § 6105(a); one count of altering or obliterating marks of identification, 18 Pa.C.S.A. § 6117(a); and one count of possession of drug paraphernalia, 35 P.S. § 780-113(a)(32).

On appeal, we review the trial court's denial of Appellant's suppression motion mindful of the following:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Freeman*, 150 A.3d 32, 34–35 (Pa. Super. 2016) (citation omitted).

At the commencement of the hearing on Appellant's suppression motion, the suppression court confirmed:

THE COURT:          So the warrant basically is the whole issue?

[DEFENSE COUNSEL]:  Correct.

THE COURT:          Do you understand that to be the issue, [Commonwealth]?

[COMMONWEALTH]:     Yes, Your Honor.

N.T., 11/27/17, at 3.

The Commonwealth presented one witness, Manheim Borough Police Detective Anthony Martelle, who testified to being a member of the Lancaster County Drug Task Force and being the "case officer" who authored and executed the search warrant for the home located at 1963 Cider Press Road in Manheim. *Id.* at 5-6. Detective Martelle stated that he applied for and executed the warrant on the same day, June 8, 2017. *Id.* at 9. The warrant was entered without objection as Commonwealth Exhibit 1. *Id.* at 10.

Detective Martelle testified that when he executed the search warrant, he found property belonging to Appellant, who resided in the home with another individual, David Brandt. *Id.* at 6-7. Detective Martelle provided Appellant with his Miranda rights "at least twice that day before we questioned him." *Id.* at 8. After the search, Appellant gave a statement. *Id.*

Appellant did not present any witnesses. Rather, defense counsel argued that paragraphs 3 and 8 of the warrant, referencing a "confidential informant" and a "concerned citizen," were "really both anonymous tips because there's no indication of reliability." N.T., 11/27/17, at 11. Counsel continued:

> [T]here is no time frame listed . . . as to when those individuals received the information; and I believe that's fatal because then all you have is basically two anonymous tips that the person at that residence – one containing double hearsay – is selling marijuana or has marijuana.
>
> Then we have to look to the rest of the warrant to see whether there's any independent corroboration of criminal activity and there simply is none.

*Id.*

The trial court stated that "[t]hese type of issues are particularly fact sensitive, and [involve] what a common sense reading of the information here would convey to the magisterial district judge who signed the warrant." N.T., 11/27/17, at 13-14. The court then suggested that the parties brief the issue. Appellant and the Commonwealth filed briefs on December 18, 2017 and December 29, 2017, respectively. On March 8, 2018, the court issued an opinion and order denying Appellant's suppression motion. The case proceeded to a bench trial, after which Appellant was convicted of the aforementioned drug and firearms crimes.[3] On August 24, 2018, the trial court sentenced Appellant to four to ten years of incarceration. This timely appeal followed.

On appeal, Appellant assails the "reliability and trustworthiness of the unnamed informant" referenced in the affidavit of probable cause supporting the search warrant. Appellant's Brief at 9. Appellant claims that the court's citation to "present tense terminology" has "little to no merit in a case where unnamed, anonymous sources with unprovable reliability and trustworthiness are relaying hearsay and double-hearsay and there are no eyewitnesses to the alleged criminal conduct." *Id.* at 22-23. Appellant concludes:

---

[3] The Honorable James P. Cullen presided at the suppression hearing and denied Appellant's suppression motion; the Honorable Howard F. Knisely presided at Appellant's bench trial.

The affidavit of probable cause in the instant case is defective and fatal, the foundation of which is an unsubstantiated and inadmissible double-hearsay allegation from unnamed and anonymous sources, which was uncorroborated by the sources, and insufficiently and inappropriately corroborated by independent police investigation. There is no evidence that these unknown individuals exist, or that the allegations were ever made. There are no facts to indicate when any of these unnamed and anonymous sources obtained the relayed hearsay and double-hearsay. There are no eyewitnesses to any criminal conduct. The basis of knowledge for the unidentified individual allegedly supplying the unnamed informant with the information is unknown. All of these unnamed individuals are unable to be proven reliable and trustworthy, and there is no indication that that any of them have provided accurate information in the past.

*Id.* at 31-32.

**Procedural Defect**

Preliminarily, we note that we cannot review the merits of Appellant's claim without reviewing the search warrant and supporting affidavit of probable cause (affidavit). Although Appellant has included the affidavit in his reproduced record, the affidavit is absent from the certified record. We recognize:

The fundamental tool for appellate review is the official record of the events that occurred in the trial court.

* * *

. . . Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty.

*Commonwealth v. Preston*, 904 A.2d 1, 6-7 (Pa. Super. 2006) (*en banc*) (citations omitted).

Our review further reveals that the clerk of courts failed to mail to Appellant a copy of the record documents in contravention of Pennsylvania Rule of Appellate Procedure 1931(d). The Rule instructs:

> **Service of the list of record documents.--**The clerk of the lower court shall, at the time of the transmittal of the record to the appellate court, mail a copy of the list of record documents to all counsel of record, or if unrepresented by counsel, to the parties at the address they have provided to the clerk. The clerk shall note on the docket the giving of such notice.

Pa.R.A.P. 1931(d).

We have stated that "[t]he purpose of Rule 1931(d) is to **assist** appellants by providing notice as to what was transmitted so that remedial action can be taken if necessary. Rule 1931(d) does not absolve the appellant from the duty to see that this Court receives all documentation necessary to substantively address the claims raised on appeal." *Commonwealth v. Bongiorno*, 905 A.2d 998, 1001 (Pa. Super. 2006) (*en banc*) (emphasis in original). Nonetheless, our Supreme Court has determined that when a document is "contained only within the Reproduced Record[, but] the accuracy of the reproduction has not been disputed . . . we may consider it." *Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012) (citing *Commonwealth v. Killen*, 680 A.2d 851, 852 n. 5 (Pa. 1996) ("As a general rule, matters not part of the record will not be considered on appeal," but the Court would "overlook this procedural defect" where, *inter alia*, appellant included "the statements in the reproduced record, [and] the Commonwealth has not objected.").

Consonant with the above authority, and considering the particular circumstances of this case, we will "overlook the procedural defect," *i.e.*, the omission of the affidavit from the certified record. Accordingly, we review Appellant's claim in light of the undisputed and identical representations of the affidavit in Appellant's reproduced record, the Commonwealth's verbatim recitation of paragraphs 3 through 9 of the affidavit in its brief, and likewise, the suppression court's references to the affidavit in its opinion. **See** Appellant's Reproduced Record at 3-6 (unpaginated); Commonwealth Brief at 3-5; Suppression Court Opinion, 3/8/18, at 3-4, 10-11.

**Affidavit Sufficiency**

The copy of the affidavit supplied by Appellant in his reproduced record – with the form title "Commonwealth of Pennsylvania, Application for Search Warrant and Authorization" – contains at the top the typed words: "County of Lancaster District Attorney 00010"; these typed words indicate that the document is a copy of the affidavit the Commonwealth introduced at the suppression hearing as Exhibit 1. The body of the 4-page document bears the affiant signatures of Detective Martelle, and the signature of the magisterial district judge as the "issuing authority."[4] In addition, each page bears a seal

_____

[4] Magisterial District Judges were known as "Justices of the Peace" prior to Act 53 of 1978, when the title became "District Justice." Thereafter, pursuant to Act 207 of 2004, the title became "Magisterial District Judge." **See also**

that reads: "Commonwealth of Pennsylvania, Lancaster County, Magisterial District Judge 02-2-05."

The affidavit further indicates that David Brandt resides at 1963 Cider Press Road. Mr. Brandt is named in the affidavit; although he resided with Mr. Brandt, Appellant is not named. As at the suppression hearing, Appellant in his appellate argument focuses on paragraphs 3 and 8 of the affidavit. Paragraph 3 references the confidential informant, who learned about the marijuana growing operation "from an individual who resided in the residence," and paragraph 8 references the concerned citizen, "within the community of Manheim," who told Officer Martelle that a male who "lives on Cider Press Road . . . is in the business of growing marijuana."

The affidavit contains a total of ten paragraphs which read:

1. Your Affiant is currently employed with Manheim Borough Police Department since January 1, 2012. During this time, your Affiant investigated drug cases involving Marijuana, Synthetic Marijuana, Heroin, LSD, Prescription Medications and Methamphetamine. These investigations led to the filing of both felony and misdemeanor violations of the PA Controlled, Substance, Drug, Device and Cosmetic Act. Your Affiant graduated from Mansfield University with an Associate's Degree in 2008 and later from Lock Haven University with a Bachelor's Degree in 2010, both in Criminal Justice Administration. You Affiant is a 2011 graduate of the Mansfield Police Academy. Your Affiant was employed by the Lycoming County Prison from November 2010 to December 2011 as a Corrections Officer, which included but was not limited to,

---

Pennsylvania Supreme Court Order dated January 6, 2005, effective January 29, 2005. In Pennsylvania, Magistrates exist only in the federal court system.

maintaining a secure facility by assessing prisoners verbal and non-verbal cues that may lead to violence. Your Affiant has attended several police schools and seminars including Understanding the Sovereign Citizen, Hotel Motel Parcel Interdiction, Drug Identification, Hidden Compartments, 2015 Pa Narcotics Officers' Association Conference, 2015 Magloclen 22nd Narcotic Investigators Conference, U.S. DEA Operation Trojan Horse Heroin and Prescription Drug Investigations Course, and Outlaw Motorcycle Gangs and the Narcotics Connection. Your Affiant was assigned full time to the Lancaster County Drug Task Force on January 5, 2015, and has taken part in excess of two hundred (200) investigations, either as the case officer or in assisting other Detectives.

2. Common sense and common knowledge dictate that those who engage in criminal Conduct attempt to hide their conduct from the authorities. Possessors and sellers of illegal drugs, are known through personal experience and training, and the experience of others in the law enforcement community to do (but not limited to) the following:
a. Frequently maintain on hand large amounts of cash that represents proceeds as well as money to finance their ongoing, drug business.
b. Drug traffickers often maintain firearms or other weapons within their residences/vehicles or on their person to protect and secure drugs, as well as, drug proceeds.
c. Maintain safety deposit boxes to secret proceeds as well as controlled substances and/or documents.
d. Maintain books, records, receipts, notes, ledgers and the like, airline tickets, money orders and other documents relating to the sale, transportation, accounting of and for controlled substances. Furthermore, your Affiant knows that dealers in illegal substances often keep the described materials in their residence/vehicles so that they will have ready access to them.
e. Dealers in controlled substances also commonly maintain addresses or telephone numbers in books or on papers which reflect information concerning their supplier and/or customers. Drug traffickers often utilize pagers, fax machines, computers and cellular phones to maintain contacts with drug associates and/or to maintain these records.
f. Sellers and users of controlled substances frequently maintain paraphernalia, as described in PA Act 64. Sellers maintain in their residence or on their person, paraphernalia for cutting, packaging,

weighing and distributing controlled substances. This paraphernalia includes but is not limited to, scales, razor blades, plastic baggies and small zip lock baggies.

3. That during the week of 21 May 2017, your Affiant spoke with a confidential informant (CI#1) who stated at David Brandt lives on Cider Press Road in Manheim and grows Marijuana inside of his residence. CI#1 stated that David Brandt grows between 15-20 Marijuana plants. CI#1 knew this to be true because he/she had spoken with an individual who resided in the residence with David Brant. CI#1 has demonstrated his/her knowledge of Controlled Substances, to specifically include Marijuana, its packaging, pricing and terminology.

4. That during the week of 21 May 2017, your Affiant conducted a Pennsylvania Department of Transportation Driver's License search for David Brandt in Manheim. Your Affiant located a Pennsylvania Driver's License photograph for a David Lee Brandt DOB: 11/29/1976 with an address of 1963 Cider Press Road Manheim, Pennsylvania 17545. Your Affiant showed CI#1 the photograph of David Lee Brandt and CI#1 positively identified the photograph as the person he/she knew as David Brandt.

5. That on 29 May 2017, your Affiant conducted surveillance of 1963 Cider Press Road Manheim, Pennsylvania 17545. During this surveillance, your Affiant did see that all of the windows on the front of the residence were obstructed from the inside of the residence. Through your Affiant's training and experience, to include being the lead case officer or assistant case officer on four Marijuana grow operations, it is common for the windows of a residence to be obstructed when Marijuana is being grown inside.

6. That on 31 May 2017, your Affiant send a court order to PPL for the hourly, daily and monthly usage for 1963 Cider Press Road Manheim, Pennsylvania 17545 for the last 3 months. In your Affiant's experience, the use of fans and high powered lights are consistent with indoor Marijuana grow operations to cycle in carbon dioxide, cycle out the oxygen the Marijuana plants emit and provide light for the plants to grow. Several fans, and lights are needed to create an environment for the growth of Marijuana plants and to remove heat buildup from the powerful lamps. These high powered lamps are set on 12 hour cycles to mimic the sun cycles in nature. This is done to enable the plants to survive and grow. The fans that are used draw a high amount of electricity

resulting in higher than normal electrical usage. Often times, these 12 hour cycles are shown in the electrical usage history.

7. That on 06 June 2017, Your Affiant received the results of a court order sent to PPL for the electrical usage for 196[3] Cider Press Road Manheim, Pennsylvania 17545. The records showed that during the months of March, April and May there were distinct 12 hours electrical spikes from 1600 hours to 0300 hours. The spikes continued every day for this time period.

8. That within 24 hours of the application of this, your Affiant spoke to a concerned citizen within the community of Manheim. He/she told your Affiant that a male named "Dave" who lives on Cider Press Road in Manheim Pennsylvania is in the business of growing and selling Marijuana. He/she stated that "Dave" grows Marijuana in the basement of his residence on Cider Press Road, Manheim Pennsylvania. He/she also knew that a "Tara Ritter" also lived with "Dave". He/she knew this to be true based on conversations this individual had with "Dave". That your Affiant showed the concerned citizen within the community of Manheim the Pennsylvania Driver's License photograph for a David Lee Brandt DOB: 11/29/1976 with an address of 1963 Cider Press Road Manheim, Pennsylvania 17545. The concerned citizen within the community of Manheim positively identified David Lee Brandt as the individual he/she knew as "Dave":

9. That a Criminal History Record check was conducted on David Lee Brandt DOB: 11/29/1976. This Criminal History Check showed that David Lee Brandt pled guilty and was sentenced for a Felony Violation of the Pennsylvania Controlled Substance, Drug, Device, and Cosmetic Act on three separate occasions. The dates David Lee Brandt pled guilty were 20 April 1998; 21 May 1998, and 24 April 1998.

10. That based on the aforementioned facts and circumstances, your Affiant respectfully requests that a search warrant be issued for 1963 Cider Press Road, Manheim Pennsylvania 17545.

Upon review, we emphasize that "the totality of the circumstances" set forth in the affidavit must be considered when examining whether probable cause supports the issuance of the search warrant. We have explained:

[T]he question of whether probable cause exists for the issuance of a search warrant must be answered according to the totality of the circumstances test articulated in **Commonwealth v. Gray**, 503 A.2d 921 (Pa. 1985), and its Pennsylvania progeny, which incorporates the reasoning of the United States Supreme Court in **Illinois v. Gates**, 462 U.S. 213 (1983).... The task of the magistrate acting as the issuing authority is to make a practical, common sense assessment of whether, given all the circumstances set forth in the affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place. A search warrant is defective if the issuing authority has not been supplied with the necessary information. The chronology established by the affidavit of probable cause must be evaluated according to a common sense determination.

Further, probable cause is based on a finding of the probability, not a *prima facie* showing, of criminal activity, and deference is to be accorded a magistrate's finding of probable cause. We must limit our inquiry to the information within the four corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable cause.

**Commonwealth v. Arthur**, 62 A.3d 424, 432 (Pa. Super. 2013) (quotation marks and some citations omitted). **See**, **e.g.**, **Commonwealth v. Wallace**, 42 A.3d 1040, 1049-50 (Pa. 2012) (noting that under the **Gates** test, "we consider the affidavit of probable cause 'in its entirety, giving significance to each relevant piece of information and balancing the relative weights of all the various *indicia* of reliability (and unreliability)' . . . to determine whether the issuing magistrate had a substantial basis for concluding that probable cause existed."). "[T]he task of a magistrate is to make a practical, common sense determination whether, given all the circumstances set forth in the affidavit, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" **Commonwealth v. Clark**, 28 A.3d 1284, 1290 (Pa.

2011) (quoting with approval **Commonwealth v. Davis**, 595 A.2d 1216 (Pa. Super. 1991).

The search warrant in this case was for a home located at 1963 Cider Press Road, in which law enforcement sought to locate controlled substances, "specifically, but not limited to, marijuana." Affidavit, 6/8/17, at 1. Appellant, who lived in the home with David Brandt, assails the reliability of the confidential informant who relayed that marijuana was being grown in the house, and a "concerned citizen," who identified a resident of the home, and stated that the resident "is in the business of growing and selling marijuana." Appellant focuses on these two individuals, and discounts the "totality of circumstances." **See Arthur**, 62 A.3d at 432. Appellant focuses on paragraphs 3 and 8 of the affidavit, and specifically claims that "paragraph 3 of the affidavit is critically defective and fatal." Appellant's Brief at 9, 13, 15-16, 19. However, Appellant's argument is not supported by the totality of circumstances set forth in the "four corners" of the affidavit, which in addition to containing information from the confidential informant and concerned citizen, references the home's "obstructed windows common to marijuana growing," electricity usage records from the prior three months showing "distinct 12 hour electrical spikes," and the criminal history record check of the home's other resident, David Brandt, which revealed three prior felony convictions under The Controlled Substance, Drug, Device and Cosmetic Act. **See Arthur**, 62 A.3d at 432.

Moreover, as stated by the Commonwealth with regard to the statements of the confidential informant and concerned citizen, "hearsay information is sufficient to form the basis of a search warrant." *See Commonwealth v. Huntington*, 924 A.2d 1252, 1255 (Pa. Super. 2007). We have explained:

A search warrant is defective if the issuing authority has not been supplied with the necessary information. The chronology established by the affidavit of probable cause must be evaluated according to a "common sense" determination.

**Hearsay information is sufficient to form the basis of a search warrant as long as the issuing authority has been provided with sufficient information to make a "neutral" and "detached" decision about whether there is a fair probability that contraband or evidence of a crime will be found in a particular place**. The duty of the reviewing court is simply to verify that the issuing magistrate had a "substantial basis for concluding that probable cause existed." **The uncorroborated hearsay of an unidentified informant may be accepted as a credible basis for issuing a search warrant if the affidavit of probable cause avers circumstances that support the conclusion that the informant was credible**. *Commonwealth v. Torres,* 564 Pa. 86, 764 A.2d 532, 537–538 (2001). . . .

Under our law, the focus is on the information provided to the *issuing authority* and its response to that information. Probable cause is a practical and fluid concept that turns on the assessment of probabilities in particular factual contexts, which cannot readily be reduced to a neat set of legal rules. The role of the magistrate, as the issuing authority, is to make a "practical, common sense decision" of whether, "given all the circumstances set forth in the affidavit," including the veracity and basis of knowledge of any persons supplying hearsay information, there is a "fair probability" that contraband or evidence of a crime will be found in a particular place. The role of the reviewing court and the appellate court is to ascertain whether the issuing magistrate appropriately determined that probable cause existed for the issuance of the warrant. Probable cause is based on a finding of

probability and does not require a *prima facie* showing of criminal activity. **Both the reviewing court and this Court must accord deference to a magistrate's finding of probable cause**.

*Id.* at 1255–56 (some citations omitted) (emphasis added).

Here, the suppression court observed that "there is nothing in the affidavit to indicate that the confidential informant from paragraph 3 had participated in the crime or had provided reliable information previously. Accordingly, the source's information standing alone would be insufficient absent corroboration." Suppression Court Opinion, 3/8/18, at 10-11. However, the court proceeded to address the circumstances that supported a conclusion that the informant was credible, noting:

> Corroboration takes two forms here. First, the information was corroborated by police investigation. Unlike in *Wallace*, where police did not detail their investigative steps, the affidavit of probable cause recites that Detective Martelle undertook surveillance of the property identified by the informant and observed that all the front windows were covered from the inside which, in his experience, was common when marijuana was being grown inside. (Aff. at ¶ 5). Detective Martelle also stated in the affidavit that he obtained a court order for electric usage at the property which showed "distinct 12 hour electric spikes" every day during March, April and May of 2017, (*id.* at ¶ 7), and that such spikes, in his experience, were "consistent with indoor marijuana grow operations," (*id.* at ¶ 6). These spikes in electric usage, occurring daily over an extended period, during the overnight hours, and in a private residence rather than in some business likely to operating overnight, are strongly suggestive of that the conduct alleged was, in fact, going on contemporaneously with the representations made to Detective Martelle. Additionally, as in [*Commonwealth v.*] *Singleton*, [603 A.2d 1072 (Pa. Super. 1992)], the information from the confidential informant was supported by that which came from the second source, the concerned citizen noted in paragraph 8 of the affidavit of probable cause.

*Id.* at 11.

The suppression court then concluded:

> **Viewing the affidavit in its entirety**, there was sufficient information for the issuing magistrate to conclude there was a fair probability that contraband or evidence of criminality would be found on the premises which Detective Martelle sought to search. Two individuals independently told Detective Martelle that a particular person at a particular address "grows" marijuana in his home. The manner in which this information was conveyed to the detective and by the detective to the magistrate, reasonably suggested that the information was current and, when the detective undertook an independent investigation to corroborate that information, he determined that the pattern of electric usage at that home was consistent with an ongoing indoor marijuana growth operation. Under these circumstances, the Court is unwilling to substitute its judgment for that of the magistrate who issued the warrant.

*Id.* at 11-12 (emphasis added).

As discussed above, the suppression court's factual findings are supported by the record and its legal conclusions are correct, and as a reviewing court, we agree that the magisterial district judge appropriately determined that probable cause existed for the issuance of the warrant. *See Freeman*, 150 A.3d at 34-35; *Huntington,* 924 A.2d at 1255. Accordingly, we do not disturb the denial of Appellant's suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/23/2019