J-S28042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL C. LINT | : | |
| | : | |
| Appellant | : | No. 988 WDA 2022 |

Appeal from the Judgment of Sentence Entered August 2, 2022
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0003141-2019

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: October 11, 2023**

Michael C. Lint appeals from the August 2, 2022 aggregate judgment of sentence of 7½ to 15 years' imprisonment imposed after a jury found him guilty of nine counts of persons not to possess, use, manufacture, control, sell or transfer firearms.[1] After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts and procedural history of this case as follows:

> [Appellant] was charged by criminal information on October 11, 2019, with 19 felonies, including nine (9) counts of persons not to possess a firearm, four (4) counts of changing or altering a firearm, four (4) counts of theft by unlawful taking, and two (2) counts

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1).

of receiving stolen property. These charges were filed after Pennsylvania State Police (PSP) troopers executed two (2) search warrants on March 30, 2019 and found nine (9) guns as well as ammunition at the residence and place of business of [Appellant], a previously-convicted felon.

On February 4, 2020, [Appellant] filed a "Motion to Suppress Evidence and Motion to Dismiss Charges Premised upon an Illegal Search and Seizure." He alleged that because there was insufficient probable cause for the issuance of the search warrant for his home, the guns and ammunition seized, and the inculpatory statements procured, were fruits of the poisonous tree and should be suppressed. An evidentiary hearing was held on May 13, 2020, after which the court ordered briefs. On July 27, 2020, the court issued an Opinion and Order denying the [Appellant's] motions.

On July 16, 2021, the Commonwealth filed a Motion in *Limine* requesting, *inter alia*, permission to offer evidence of [Appellant's] 2013 conviction of persons not to possess a firearm, and/or his 2016 conviction of aggravated assault. The Commonwealth's purported reasons were to (1) aid in the grading of his sentence, in the event of a conviction, and (2) prove an element of the crime of persons not to possess in the instant case. A decision on the Commonwealth's Motions in *Limine* was deferred until immediately prior to jury selection at the trial in this case. On September 10, 2021, the Commonwealth filed a Notice of Enhanced Penalties, advising that it was seeking enhanced sentencing based upon [Appellant's] prior conviction for persons not to possess a firearm.

On March 18, 2022, at a pre-trial conference, the Commonwealth made an oral motion to amend the criminal information. This was based on a typographical error regarding dates on the original information. The court granted this motion with [Appellant's] consent. The Commonwealth also orally moved to bifurcate, seeking to try the nine (9)

persons not to possess counts separately from the remaining changing/altering, theft by unlawful taking, and receiving stolen property counts. [Appellant] consented. The court granted said motion and ordered [Appellant] to be tried at counts 1 through 9 at the first trial and counts 10 through 19 at a subsequent trial. Immediately prior to jury selection on March 21, 2022, the court decided the Commonwealth's Motion In *Limine* and ordered that:

(1) [T]he Commonwealth will be permitted to introduce evidence of any of [Appellant's] pre-January 1, 2019 convictions to any crimes enumerated in 18 Pa.C.S.[A.] §6105(b) solely for the purpose of establishing a violation of 18 Pa.C.S.[A.] § 6105(a); and

(2) Once evidence of those crimes has been admitted into evidence, the Court will read to the jury an instruction directing them to consider [Appellant's] prior convictions only as evidence to establish the prior conviction element of the crime of persons not to possess firearms, not as evidence of [Appellant's] bad character or propensity to commit crime...

The trial commenced on March 22, 2022. Over the course of the three (3)-day trial, the Commonwealth called seven (7) witnesses, including [Appellant's] ex-girlfriend Lauren Carp and the three (3) Pennsylvania State Police troopers who participated in the execution of the search warrant at [Appellant's] residence on March 30, 2019.

Carp testified that [Appellant] and she had dated for one (1) year prior to [Appellant's] arrest. They lived together in [Appellant's] mobile home at 133 Tennis Court in Mount Pleasant from March 2018 to March 2019. [Appellant's] children from a prior relationship lived with them. After the county's children and youth agency became involved with [Appellant's] children, and she learned that [Appellant] was prohibited from possessing a firearm, Carp removed

- 3 -

her guns from their residence and took them to her parents' house.

Approximately one (1) month after removing her guns, [Appellant] demanded that she bring them back. She agreed to do so and hid them under their bed. The following day, Carp discovered that her guns were gone. She asked [Appellant] where they were, and he told her "not to worry about it." Carp asked him to remove the serial numbers, so that she would not get in trouble if they were found in his possession.

In late March or early April 2019, [Appellant] asked Carp to come to his place of business at the Verizon Service Center on Donohoe Road in Greensburg, so that he could prove that he had removed the serial numbers on her guns. When she arrived, [Appellant] showed her the guns and the obliterated serial numbers. She asked [Appellant] to return her guns, but he refused. Carp told him that she was going to go to the police. On March 28, 2019, Carp reported the theft of her four (4) guns to Trooper Cristen Cindric.

Trooper John Beynon testified that based upon Carp's report to Trooper Cindric, he obtained two (2) search warrants from Magisterial District Judge Anthony Bompiani - one ( 1) for [Appellant's] residence and one (1) for his place of business. Both warrants were executed at the same time on March 30, 2019. Beynon, Joseph Lauricia, Patrick Nied, and others appeared at [Appellant's] residence.

Troopers Beynon, Lauricia and Nied testified consistently about the events that unfolded at [Appellant's] residence on March 30, 2019. According to Lauricia, as the troopers approached the residence, they observed a handwritten note and a copy of [Appellant's] photo ID taped to the front door. The writer of the note requested that [Appellant] be contacted on his cellular telephone before anyone was to enter the residence. Instead of knocking and announcing, they called the number provided. [Appellant] did not answer, so the troopers used the

- 4 -

loudspeaker on their patrol car to attempt to compel [Appellant] to leave his home. Eventually, he came outside. With guns drawn, the troopers commanded [Appellant] to raise his hands, and he did. [Appellant] was detained in his front yard, while officers swept the residence. Trooper Nied handcuffed [Appellant] and placed him in custody. Troopers Beynon and Lauricia read **Miranda**[2] warnings to him, and then, after he signed a written waiver of counsel form, interviewed him at a picnic table situated in the front yard. [Appellant] advised the officers that there were guns in his safe in the living room. He gave them the access code. He also admitted to obliterating the serial numbers on the guns belonging to Carp, which were found at his place of employment.

Trial court opinion, 12/28/22 at 1-6 (citations, extraneous capitalization, and footnotes omitted).

As noted, Appellant proceeded to a jury trial on March 22, 2022. Following a three-day trial, Appellant was found guilty of nine counts of persons not to possess, use, manufacture, control, sell or transfer firearms. On August 2, 2022, the trial court sentenced Appellant to an aggregate term of 7½ to 15 years' imprisonment. Appellant did not file any post-sentence motions. This timely appeal followed on August 30, 2022.[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

_____

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[3] The record reflects that the trial court granted the Commonwealth's oral motion to amend the criminal information to add the charge of altering or obliterating marks of identification, 18 Pa.C.S.A § 6117(a), a felony of the second degree. Appellant pled guilty to this charge on September 8, 2022 and was immediately sentenced to 3½ to 7 years' imprisonment, to run
*(Footnote Continued Next Page)*

Appellant raises the following issues for our review:

> I. Did the [trial] court err in failing to suppress the contents of [Appellant's] residence because the search warrant was not based upon probable cause to search the residence?

> II. Did the [trial] court err in failing to suppress the interview/admissions of [Appellant] in that his statements were the direct result of the illegal search noted above?

> III. Did the [trial] court abuse its discretion in allowing the prosecution to choose the most prejudicial prior predicate offense to prove that [Appellant] was prohibited from possessing a firearm, even if the prosecution was not required to accept a general stipulation that Appellant was prohibited from possessing a firearm?

Appellant's brief at 4-5 (extraneous capitalization omitted).[4]

## I.

Appellant first argues that the suppression court erred in denying his motion to suppress the firearms and ammunition found in his residence because the search warrant not supported by the requisite level of probable cause. *Id.* at 12. For the following reasons, we disagree.

_____

concurrent to the sentenced imposed on August 2, 2022. Appellant's remaining charges were dismissed, and he did not present any claims on appeal related to his guilty plea.

[4] Appellant has indicated that he has abandoned his claim concerning the offensive gravity score utilized by the sentencing court (Issue IV).

Our standard of review in addressing a challenge to a denial of a suppression motion is well settled.

> [Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), *appeal denied*, 135 A.3d 584 (Pa. 2016).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee an individual's freedom from unreasonable searches and seizures." *Commonwealth v. Bostick*, 958 A.2d 543, 550 (Pa.Super. 2008) (citation and internal quotation marks omitted), *appeal denied*, 987 A.2d 158 (Pa. 2009); *see also* U.S. Const. amend. IV.

> Under the federal and state constitutional prohibitions of unreasonable searches and seizures, both the United States Supreme Court and this Court have consistently held that, subject to certain exceptions, a search is constitutionally invalid unless it is conducted pursuant to a warrant issued by a neutral and detached magistrate and supported by probable cause. Probable cause exists where, based upon a totality of the circumstances set forth in the affidavit

of probable cause, including the reliability and veracity of hearsay statements included therein, there is a fair probability that ... evidence of a crime will be found in a particular place. In reviewing an issuing authority's decision to issue a warrant, a suppression court must affirm unless the issuing authority had no substantial basis for its decision. On appeal, this Court affirms the decision of the suppression court unless it commits an error of law or makes a factual finding without record support.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1063–1064 (Pa. 2013) (citations and internal quotation marks omitted), *cert. denied*, 572 U.S. 1048 (2014).

In *Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa.Super 2019), this Court "emphasize[d] that 'the totality of the circumstances' set forth in the affidavit must be considered when examining whether probable cause supports the issuance of the search warrant." *Id.* at 505. The *Harlan* Court noted:

[T]he question of whether probable cause exists for the issuance of a search warrant must be answered according to the totality of the circumstances test articulated in *Commonwealth v. Gray*, [503 A.2d 921 (Pa. 1985)], and its Pennsylvania progeny, which incorporates the reasoning of the United States Supreme Court in *Illinois v. Gates*, [462 U.S. 213 (1983)]…. The task of the magistrate acting as the issuing authority is to make a practical, common sense assessment of whether, given all the circumstances set forth in the affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place. A search warrant is defective if the issuing authority has not been supplied with the necessary information. The chronology established by the affidavit of probable cause must be evaluated according to a common sense determination.

> Further, probable cause is based on a finding of the probability, not a ***prima facie*** showing, of criminal activity, and deference is to be accorded a magistrate's finding of probable cause. We must limit our inquiry to the information within the four corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable cause.

***Harlan***, 208 A.3d at 505 (internal citation formatting amended; some citations omitted).

In his February 4, 2020 suppression motion and subsequent Rule 1925(b) statement, Appellant detailed his claim of error relating to the insufficiency of the application for the search warrant. ***See*** Motion to Suppress, 2/4/20 at ¶¶ 2-6; ***see also*** Rule 1925(b) Statement, 9/20/22, at ¶ 5(a). The trial court addressed Appellant's claim of error in its July 27, 2020 opinion, rejecting Appellant's assertions regarding the unreliability of the source of the information – his ex-girlfriend Lauren Carp – on account of the fact she had last seen the firearms at his place of work on March 24, 2020. Trial court opinion, 7/27/20, at 6; ***see also*** Appellant's brief at 13. The trial court found that although "it may have been more likely, when [Magisterial District Judge ("MDJ")] Bompiani reviewed the search warrant, the firearms would be [at Appellant's workplace] as opposed to [his] home … this did not eliminate the 'fair probability' that the guns would be found at the home." Trial court opinion, 7/27/20, at 6.

The trial court noted that the affidavit of probable cause included specific descriptions of make, model, caliber, and serial numbers of the firearms, along

with testimony that Appellant had boasted to Carp that if police came to **his residence**, the encounter would "end in a shootout." *Id.* at 3, 6-8. The record also established that MDJ Bompiani was aware from the affidavit that Appellant was a convicted felon who was not permitted to possess firearms and that Carp had threatened to call police if he did not return the firearms to her. *Id.* at 2, 6. The court then concluded that "a review of the facts contained within the four corners of the affidavit incorporated into the search warrant indicates that MDJ Bompiani has a substantial basis for concluding that probable cause to search the home existed." *Id.* at 6. Based on our review, we find the trial court's factual findings are supported by the record and its legal conclusions are free of error. Therefore, we shall not disturb the trial court's ruling.

## II.

Appellant next argues, albeit with virtually no citation to the certified record, that the suppression court erred in denying his motion to suppress various inculpatory statements that he made to police following the execution of the search warrant. Appellant's brief at 14. Appellant maintains that "if this Court finds that the warrant for [his] home was not based on probable cause … [t]he interview of [Appellant] following the execution of the search warrant[] are 'fruits of the poisonous tree' and should also be excluded." *Id.* Having already concluded that the search of his residence was conducted

pursuant to legal and properly executed search warrant, we find Appellant's contention entirely devoid of merit.

In reaching this conclusion, we note that Appellant's inculpatory statements during the subsequent police interview at his residence were made independent of the search warrant and only after Appellant was properly advised of and knowingly, intelligently, and voluntary waived his *Miranda* rights. *See* notes of testimony, 3/23/22 at 174-175, 180-182; *see also* Commonwealth's Exhibit 84. As recognized by the trial court, at no point during this course of this litigation did Appellant challenge the voluntariness of his statements or argue that they were made in violation of his *Miranda* rights. *See* trial court opinion, 12/28/22 at 9. Any claim to the contrary on appeal would, therefore, be waived. *See Commonwealth v. Schoff*, 911 A.2d 147, 158 (Pa.Super. 2006) (finding that a party must make a timely and specific objection at trial in order to preserve an issue for appellate review, and the failure to do so results in waiver of that issue on appeal); *see also* Pa.R.A.P. 302(a). Accordingly, Appellant's claim must fail.

## III.

In his final claim, Appellant contends that he was unfairly prejudiced by the trial court's decision to allow the Commonwealth to introduce into evidence his "most prejudicial prior predicate offense," namely his prior aggravated assault conviction, to prove that he was prohibited from possessing a firearm. Appellant's brief at 15. For the following reasons, we disagree.

> The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

**Commonwealth v. Shelton**, 170 A.3d 549, 552 (Pa.Super. 2017) (citations and internal quotation marks omitted).

As applicable here, the crime of persons not to possess, use, manufacture, control, sell or transfer firearms provides that a person may not possess a firearm if "convicted of an offense enumerated in subsection (b) ... or whose conduct meets the criteria in subsection (c)[.]"  18 Pa.C.S.A. § 6105(a).  The Commonwealth in this matter therefore bore the burden of proving beyond a reasonable doubt that Appellant had been convicted of an enumerated offense in subsection (b) or met the criteria in subsection (c).

In **Commonwealth v. Jemison**, 98 A.3d 1254, 1262 (Pa. 2014), our Supreme Court explicitly held that a defendant **does not** suffer "unfair prejudice merely by the admission into evidence of his or her certified conviction of a specific, identified, predicate offense, which has been offered by the Commonwealth to prove the prior conviction element of § 6105." **Id.** at 1262.  In reaching this conclusion, the **Jemison** Court emphasized that "[a]ny possibility of unfair prejudice is greatly mitigated by the use of proper cautionary instructions to the jury, directing them to consider the defendant's prior offense only as evidence to establish the prior conviction element of the

[section] 6105 charge, not as evidence of the defendant's bad character or propensity to commit crime." ***Id.***

Here, the charge of aggravated assault introduced by the Commonwealth is clearly one of the enumerated offenses under § 6105(b). The trial court appropriately instructed the jury regarding its proper consideration of Appellant's prior aggravated assault conviction, thereby alleviating any undue prejudice. ***See*** notes of testimony, 3/23/22 at 192. Accordingly, Appellant's challenge to the admission of his prior aggravated assault conviction into evidence is meritless.

For all the foregoing reasons, we affirm the trial court's August 2, 2022 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

10/11/2023