2026 PA Super 135

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMIE LEE WAGNER JR. | : | |
| | : | |
| Appellant | : | No. 1559 MDA 2025 |

Appeal from the Order Entered October 8, 2025
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-SA-0000110-2025

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.: **FILED: JUNE 25, 2026**

Jamie Lee Wagner Jr. ("Appellant") appeals *pro se* from the order entered in the Court of Common Pleas of Schuylkill County dismissing his appeal from a magisterial district judge's adjudication of five summary traffic offenses due to Appellant's failure to appear at his *de novo* trial.[1] We affirm.

We briefly recount the facts and procedural history leading to this appeal. On April 18, 2025, Pennsylvania State Police Trooper Christopher Rooney issued five separate citations at five separate dockets to Appellant, all of which arose from the same traffic stop. The five violations were for failing to display a registration plate, operating a vehicle with a suspended, revoked,

---

[1] Appellant purported to appeal from the judgment of sentence. As explained in the body of this opinion, the order dismissing Appellant's appeal resulted in the reinstatement of the magistrate district judge's judgment of sentence. To secure relief, Appellant must show that the trial court erred in entering that order. We have amended the caption accordingly.

or canceled driver's license, operating an unregistered vehicle, operating a vehicle without a valid certificate of inspection, and operating a vehicle without the required financial responsibility.[2]

The magistrate district judge found Appellant guilty at all dockets on July 9, 2025.  Appellant thereafter filed a notice of appeal at each docket to the Court of Common Pleas.  **See** Pa.R.Crim.P. 462(a) ("When a defendant appeals after the entry of a guilty plea or a conviction by an issuing authority in any summary proceeding ... the case shall be heard *de novo* by the judge of the court of common pleas sitting without a jury.").  The five traffic citations were consolidated under docket CP-54-SA-0000110-2025 with trial scheduled for October 8, 2025.  In the interim, Appellant filed pre-trial motions seeking dismissal and discovery.  The trial court did not rule on the motions.  Instead, on Appellant's trial date the trial court entered an order dismissing the appeal due to Appellant's failure to appear.  **See** Order, 10/8/25 ("And NOW, this 8th day of October, 2025, the Court ... Grants the Commonwealth's motion to dismiss the appeal for Defendant's failure to appear.").

Appellant filed a timely notice of appeal on October 20, 2025, and complied with the trial court's order to file a Rule 1925(b) concise statement. The trial court issued an opinion concluding that the court "did not err in dismissing ... Appellant's summary appeal" due to his "failure to appear at the

---

[2] The citations were filed at MJ-21301-TR-0000631-2025 through MJ-21301-TR-0000635-2025.  The respective statutory citations for the five offenses are 75 Pa.C.S. §§ 1332(a), 1543(a), 1301(a), 4703(a), and 1786(f).

October 8, 2025 hearing." Trial Court Opinion, 12/9/25, at 3. On appeal, Appellant seeks to argue the following errors:

1. Whether the trial court erred in exercising jurisdiction where the initiating citations and/or complaints lacked a sworn or verified affidavit of probable cause.

2. Whether the trial court erred by permitting proceedings in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Article I of the Pennsylvania Constitution.

3. Whether the trial court erred by failing to enforce Pa.R.Crim.P. 573, thereby depriving Appellant of discovery and exculpatory evidence in violation of due process and *Brady v. Maryland*, 373 U.S. 83 (1963).

4. Whether the arresting officer acted *ultra vires* by detaining Appellant absent probable cause, evidence of commercial activity, or a threat to public safety.

5. Whether the trial court erred in admitting or relying upon evidence derived from compelled identification of Appellant, obtained under threat and duress without probable cause, in violation of the Fifth Amendment and Article I § 9.

6. Whether the seizure and towing of private property without a judicial warrant constituted an unreasonable seizure under the Fourth Amendment and Article I § 8 of the Pennsylvania Constitution.

7. Whether the enforcement of Title 75 against a non-commercial private traveler violated Appellant's constitutional rights to liberty and travel.

8. Whether the trial court's denial of dismissal, despite these violations, constitutes reversible error and a deprivation of fundamental fairness under the Fourteenth Amendment.

9. Whether the trial court erred in proceeding without a trial by jury and without obtaining a knowing, intelligent, and voluntary waiver of that right, thereby denying Appellant his constitutional protections under Article I § 6 of the Pennsylvania Constitution and the Sixth Amendment to the United States Constitution.

Appellant's Brief at 3-5.[3]

The trial court effectively concluded that Appellant forfeited all his issues by failing to appear. We agree. Rule 462 specifically states: "If the defendant fails to appear, the trial judge may dismiss the appeal and enter judgment in the court of common pleas on the judgment of the issuing authority." Pa.R.Crim.P. 462(3)(D). Appellant does not raise any issue concerning the propriety of the dismissal nor does he explain his failure to appear. In *Commonwealth v. Marizzaldi*, 814 A.2d 249, 250 (Pa. Super. 2002), Marizzaldi failed to appear for his Rule 462 *de novo* appeal and the trial court reinstated the district magistrate's judgment. On appeal to this Court, Marizzaldi "attached an affidavit to his brief wherein he assert[ed] that he arrived for his summary appeal hearing approximately ten minutes late and learned that his appeal had already been dismissed." *Id.* at 251. He also alleged "that he was not given an opportunity to explain to the trial court the reason for his tardiness." *Id.*

The Comment to Rule 462 explains that "the trial judge may dismiss a summary case appeal when the judge determines that the defendant is absent without cause from the trial *de novo.*" *Id.* (quoting Comment). While Marizzaldi argued "that the trial court's failure to make inquiry into his absence constitutes reversible error," we did not hold that the mere failure to probe that issue warranted relief. Instead, we cited Marizzaldi's affidavit attached

_____

[3] The Commonwealth did not file a brief.

- 4 -

to his brief, stating: "[A]ssuming *arguendo* that the facts set forth in [Marizzaldi's] brief and affidavit are true and correct … [t]he abbreviated transcript in the certified record does not contradict [his] assertions on appeal, and the brief opinion of the trial court makes no mention that a determination of the cause or duration of [Marizzaldi's] absence was made." *Id.* at 252. Thus, we vacated the judgment of sentence and remanded for trial.

It is unknown whether the Commonwealth's request to dismiss the case was made on the record in open court; hence, we cannot determine whether the trial court made inquiry into Appellant's absence.[4] However, this alone does not constitute reversible error. In **Commonwealth v. Dixon** we held:

> We understand **Marizzaldi** to require a new trial when: (1) a trial court dismisses a summary appeal without considering whether the absentee defendant had cause to justify the absence; **and** (2) the absentee defendant presents an affidavit on appeal that (assuming the assertions delineated in the affidavit are true) presents at least a *prima facie* demonstration that cause existed for the absence, rendering that absence involuntary.

**Commonwealth v. Dixon**, 66 A.3d 794, 797 (Pa. Super. 2013) (emphasis added). Whereas the **Marizzaldi** Court vacated the judgment of sentence

_____

[4] "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Commonwealth v. Harlan**, 208 A.3d 497, 501 (Pa. Super. 2019) (quoting **Commonwealth v. Preston**, 904 A.2d 1, 6-7 (Pa. Super. 2006) (*en banc*)).

We add that the trial court opinion could not address this issue, as the jurist who issued the order retired before the opinion could be filed. **See** Order, 11/12/25 (order reassigning case).

and remanded for a new trial due to the appellant establishing error in the dismissal, the **Dixon** Court concluded that Dixon "failed in his affidavit to set forth a *prima facie* case of involuntariness sufficient to warrant a new trial pursuant to **Marizzaldi**." **Id.** at 798. We thus affirmed the order dismissing Dixon's appeal.

Appellant's failure to explain the reasons for his absence at trial and to attach an affidavit setting forth this information precludes any form of relief. Based upon the record before us, we have no basis to conclude that the trial court erred in ordering Appellant's *de novo* appeal dismissed for failing to appear. We therefore affirm the order dismissing the appeal.

Next, consistent with our prerogative "to liberally construe materials filed by a *pro se* litigant," **Commonwealth v. Adams**, 882 A.2d 496, 498 (Pa. Super. 2005), we discern from Appellant's brief a complaint that the trial court should have granted his pre-trial motions to dismiss the case instead of holding the *de novo* trial. In other words, Appellant overlooks his own failure to appear by arguing the merits of his motion to dismiss. **See** Appellant's Brief at 8 (arguing that the trial court erred "by refusing to adjudicate preserved jurisdictional and constitutional claims").

The trial court's opinion effectively determined that Appellant's failure to appear forfeited his right to litigate the pre-trial motions. Appellant does not raise any kind of argument responding to this finding. We therefore deem any argument in that regard waived. Our willingness to construe *pro se* materials liberally "confers no special benefit upon the appellant. To the

contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." **Adams**, 882 A.2d at 498 (citation omitted).

Finally, even if preserved, we would conclude that the failure to address Appellant's pre-trial motions was not prejudicial as Appellant's arguments are frivolous. Appellant's motion to dismiss alleged, in pertinent part, the following:

> 4. The stop was initiated solely because Defendant's private automobile did not display a license plate. No evidence exists of criminal conduct or a threat to public safety.
>
> 5. During the stop, Defendant was compelled under threat and duress to identify himself despite asserting he was not engaged in commerce.

Motion to Dismiss, 9/17/25, at ¶¶ 4, 5.

Appellant filed a memorandum of law in support, and a review of that memorandum establishes that Appellant's arguments are adopted from the "sovereign citizen" movement. While Appellant does not use that phrase or identify himself as such, he theorized that the traffic stop was *per se* invalid on the basis that citizens have a right to engage in "non-commercial" travel which may not be regulated by the States. His memorandum argued that Corporal Rooney "tow[ed] [Appellant's] private property" against his will, despite Appellant's "statement of not engaging in commerce." Memorandum of Law, 9/17/25, at 2. He cites passages from United States Supreme Court caselaw, without accounting for context, to support an alleged "entitle[ment] to carry on his private business in his own way," and that he "owes no duty

to the State ... to divulge his business[.]" ***Id.*** at 3 (quoting ***Hale v. Henkel***, 201 U.S. 43, 74 (1906) (ellipsis in original).[5] He invokes a "right of a citizen to travel upon the public highways and to transport his property thereon," ***id.*** at 4, and later draws a distinction between "commercial" use of the highways and "non-commercial use," arguing in relevant part:

> There is no evidence the Defendant was using the automobile for commercial purposes as well as no evidence of a corpus delicti indicating a criminal offense. A mere traffic citation under § 1332 is insufficient to establish probable cause (***Brinegar v. United States***, 338 U.S. 160 (1949)). Therefore the Pennsylvania State Trooper exceeded lawful authority (ultra vires) depriving the honorable court of jurisdiction over this stop.
>
> * * *
>
> I bring up this point regarding commerce because the alleged violations are of P.a. C. S. Title 75, the Motor Vehicle Code, and Congress has established that a motor vehicle means every description of a carriage propelled or drawn by mechanical power and used for commercial purposes in 18 U.S.C. 31 (7), where they also define used for commercial purposes (8). Also, driver is defined in 49 CFR 390.5T as any person who operates a commercial motor vehicle (9).

***Id.*** at 8.

These theories have been frequently associated with the "sovereign citizen" movement, as explained in this law review article:

> The most common type of Sovereign Citizen claim encountered by local and state police, as well as federal border patrol agents, is the "right to travel." Citing the Constitution, Supreme Court cases, and a plethora of other sources, Sovereign Citizens believe they are not required to have driver's licenses, license plates,

---

[5] The ***Hale*** Court was comparing the respective rights of an individual and a corporation when "summoned before a grand jury as a witness[.]" ***Hale v. Henkel***, 201 U.S. 43, 74 (1906).

vehicle registration, or to stop at border or sobriety checkpoints. Similar to other claims, Sovereign Citizens discussing the "right to travel" place special emphasis on the words being used. They differentiate between a driver and a traveler; an automobile and a motor vehicle; commercial and non-commercial; and public versus private conveyances. Once a Sovereign Citizen claims that he or she is merely a traveler or traveling, he or she then uses federal and state cases to support the "right to travel." Sovereign Citizens also believe the right to travel constitutes a complete bar on government interference with travel in the absence of probable cause or evidence that a victim has been harmed.

Caesar Kalinowski IV, *A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. 153, 167–68 (2019) (footnotes omitted).

We have previously cited this article in an unpublished memorandum decision, ***Commonwealth v. Syke***, 1213 WDA 2023, 2024 WL 3878319 at *3 n.5 (Pa. Super. filed August 20, 2024) (unpublished memorandum), and added, in response to similar arguments:

[Syke] appears to claim that any restriction that touches on the "right to travel," which in this case apparently extends to operating a motor vehicle however [he] wishes, is *per se* invalid. This argument does not account for the obvious countervailing governmental interests involved. ***See generally Cady v. Dombrowski***, 413 U.S. 433, 441 (1973) ("All States require vehicles to be registered and operators to be licensed. States and localities have enacted extensive and detailed codes regulating the condition and manner in which motor vehicles may be operated on public streets and highways.").

***Id.*** at *3.[6] So too here. ***See*** Appellant's Brief at 16 (stating that "[t]he automobile was Appellant's private property" and that "inference with this sacred use of property lacks any lawful justification," and that the "absence of

---

[6] ***See*** Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

plates" was lawful "under common law").  Because Appellant's arguments are similarly frivolous, any error in not ruling on his motion to dismiss the case did not prejudice Appellant.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/25/2026