J-A05020-24
J-A05021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAMON JOHNSON | : | |
| | : | |
| Appellant | : | No. 761 EDA 2023 |

Appeal from the PCRA Order Entered October 28, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010937-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAMON JOHNSON | : | |
| | : | |
| Appellant | : | No. 769 EDA 2023 |

Appeal from the PCRA Order Entered February 15, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013500-2009

BEFORE: DUBOW, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                    **FILED JULY 15, 2024**

Appellant, Damon Johnson, appeals from the orders entered in the Philadelphia County Court of Common Pleas, entered on October 28, 2022 at docket No. 10937-2016, and on February 15, 2023 at docket No. 13500-2009, which dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

A prior panel of this Court summarized the relevant facts and procedural history of this case as follows:

> On January 28, 2016 at approximately 9:00 pm, Police Officer Paul Sulock and his partner, Police Officer Jeffrey Stauffer, were traveling northbound on Frankford Avenue, approaching Cambria, when they heard two gunshots north of their location. Officer Sulock continued northbound on Frankford Avenue toward the gunshots. Upon his arrival, within 30 seconds of hearing the gunshots, Officer Sulock observed a large crowd of people running in different directions while screaming. Officer Sulock was then flagged down by a female who told him "they are shooting out here," to which he inquired as to the identity of the shooter. The female replied that she did not know and that she had only heard the shots.
>
> Within two minutes after speaking with the female, Officer Sulock drove eastbound on the 1900 block of Stella Street where he observed a light blue 2001 Grand Marquis traveling at a high rate of speed. The car was leaving Frankford Avenue, the area of the shooting, and heading westbound on Stella Street. The 1900 block of Stella Street is approximately one block away from the scene of the shooting at 2900 Frankford Avenue. While Officer Sulock was driving eastbound, [Appellant] was driving westbound. However, Officer Sulock was able to record the license plate number and observed [Appellant] driving the car. Officer Sulock immediately made a U-turn and followed [Appellant]'s vehicle. After [Appellant] noticed he was being followed, he abruptly parked in front of 1945 or 1947 Stella Street, in a handicap parking space, on the north side of the street. Once parked, [Appellant] immediately left the vehicle, ran, and attempted to enter 1947 Stella Street. Officer Sulock stepped out of his vehicle to investigate [Appellant]'s behavior.
>
> As Officer Sulock approached [Appellant], [Appellant] bladed his body away from Officer Sulock, turning the left side of his body, while keeping his left hand in his

waistband area. Officer Sulock asked [Appellant] what he was doing and requested to see [his] hands. [Appellant] responded by repeatedly claiming, "I live here." However, Officer Sulock knew [Appellant]'s claim to be false as Officer Sulock was familiar with the area and knew the actual occupant of this residence to be an elderly Caucasian man. Further, Officer Sulock had never seen [Appellant] in the area of the home. During the conversation, [Appellant] stepped over a handicap ramp at 1947 Stella Street and continued to inch his way eastbound. Officer Sulock asked, again, to see [Appellant]'s hands and [he] complied. Officer Sulock then placed [Appellant], with his hands up, against a wall.

After [Appellant] was against the wall, Officer Sulock proceeded to ask him for the location of the keys to the vehicle and inquired further as to his behavior. [Appellant] responded to the questions by stating, "I was never in no vehicle. I don't know what you're talking about." Officer Sulock noticed that [Appellant] was extremely nervous and smelled of gunshot powder. Officer Sulock then placed [Appellant] in the back of his police car for further investigation and retrieved the registration to the vehicle, which was hanging out of [Appellant]'s hoodie['s] pocket. While [Appellant] was in the police car, Officer Sulock walked to [Appellant]'s vehicle and noticed the vehicle was open. Officer Sulock began looking around the car with his flashlight. Officer Sulock found car keys on the driver's side floorboard and a spent shell casing on the floorboard in the back, behind the driver's seat.

As Officer Sulock was looking around inside of the vehicle, he heard glass shatter. Officer Sulock looked toward his police car and observed his partner place both of his hands up in front of his face and both of [Appellant]'s feet leaping out of the back of the police car. After exiting the vehicle, [Appellant] began fleeing on foot, eastbound on Stella Street, then northbound on Braddock, and then westbound on Toronto. Officer Sulock placed a call over police radio to other officers in the area and immediately gave chase on foot. Officer Sulock was able to get

- 3 -

[Appellant] on the ground, while [Appellant] was heading westbound on Toronto. Officer Sulock required the assistance of five or six other officers in order to handcuff [Appellant]'s hands behind his back and control him due to [his] resistance.

After [Appellant] was under control, Officer Sulock sprinted back to [Appellant]'s vehicle and observed other officers around the car and noted the car doors were open and the trunk of the car was open. Officer Sulock then observed two handguns, a gold .45 caliber firearm and a black High Point .9 mm handgun, in the trunk of the vehicle. After observing the two firearms, Officer Sulock contacted East Detectives and [Appellant] was arrested and transported to East Detectives while [Appellant]'s vehicle was held at the scene. At a later date, it was discovered that [Appellant] was not licensed to carry or possess a firearm.

Also, on January 28, 2016, at around 9:00 pm, Detective Dennis Dusak was involved in an investigation of shots fired at 2957 Frankford Avenue. The scene was located near 2900 Frankford Avenue and Orleans Street. During his investigation, he observed a bullet hole in the front window of a residence at 2957 Frankford Avenue and spoke with the occupants of the residence, a mother and her 10-year-old child. Detective Dusak entered the residence and saw the bullet hole from inside the residence and noted there was also a bullet hole on the wall and on the other side of a kitchen cabinet. Detective Dusak also discovered a bullet projectile inside of the kitchen cabinet and submitted it to the Firearms Identification Unit. On a later date, Detective Dusak submitted two spent casings, discovered in front of 2033 East Orleans Street, on the highway, for a ballistic comparison with the bullet projectile he found at 2957 Frankford Avenue. The two locations where the casings and the bullet projectile were found were approximately one block away from each other. The casings were later identified as casings from a .45 and a .9 mm firearm.

Once [Appellant] was arrested, Detective Randall Farward recovered: two .45 caliber fired cartridge casings (FCCs) at 2033 East Orleans Street, two firearms from [Appellant]'s vehicle on Stella Street, a High Point .9 mm and a Model Star .45 caliber, one .9 mm shell casing from the rear driver's seat of [Appellant]'s vehicle, [Appellant]'s DNA, and [his] clothing to submit to the chemical laboratory to have ballistic activity testing performed. During testing of [Appellant]'s clothing, gunshot residue was discovered on the front, right side of [his] hooded sweatshirt, left sleeve and cuff, and inside of the hooded sweatshirt's pocket.

The firearms recovered from [Appellant]'s vehicle were submitted for DNA testing. The results were inconclusive. However, the testing revealed that the .45 caliber firearm contained DNA from two individuals, at least one of wh[om] was a male. Police Officer Gregory Walsh, a firearms examiner, test fired both firearms found in [Appellant]'s vehicle and found both to be operable. Officer Walsh also tested the three FCCs and projectile recovered. Officer Walsh concluded that the .45 caliber FCCs recovered from 2033 East Orleans Street, the shooting scene, were fired from the .45 caliber firearm recovered from [Appellant]'s trunk and the .9 mm FCC found in [Appellant]'s vehicle was fired from the .9 Trim firearm found in [Appellant]'s trunk.

[Appellant] testified at trial that he did not have a gun in his possession and that he did not know how the firearms got inside the trunk of his vehicle on January 28, 2016. He further testified that he had no idea how the gunpowder residue had gotten on his hooded sweatshirt the evening the incident occurred. [Appellant] testified that he believed he was arrested around 8:50 pm, shortly after leaving his house for his night classes. [Appellant] also testified that he normally attended night classes from 4 pm until 10 pm on a daily basis.

[Appellant] testified that he owned four vehicles, which he would lend to his friends and family, and that

on the evening of January 28, 2016, he had woken up late for school. [Appellant] testified to the [c]ourt that[,] on that date[,] he hopped into the vehicle outside of his house since it was already started. Then, he corrected himself and stated that he went outside and put the keys in the ignition of the vehicle since it had an automatic starter…. He then proceeded to drive down to the intersection of Emerald and Stella and noticed police officers at the intersection. [Appellant] continued driving onto the 1900 block of Stella Street to pick up his model for school. [Appellant] claimed that his model was Mr. John, a man who lives at a house with a handicap parking space in front of it. [Appellant] then parked in the handicap space because it was already dug out after it had snowed.

[Appellant] claimed that the police officers were still at the intersection and watched him as he exited the vehicle and proceeded to 1947 Stella Street. [Appellant] knocked on the door to see if Mr. John wanted to come to [Appellant]'s school to model or if he wanted to reschedule. As [Appellant] was walking down the handicap ramp from Mr. John's house, he noticed the police officers without headlights on and without any lights. As [Appellant] walked down the ramp, he saw the two police officers with their guns pointed at him and he put his hands in the air. [Appellant] then claimed that the police officers handcuffed him and told him he was handcuffed for an investigation. The police officers had [Appellant] sit in the snow for a second and when [Appellant] stood back up, his pants fell down to his ankles. [Appellant] asked if one of the police officers would help him pull his pants back up but the officer refused.

[Appellant] testified that he was placed in the back of the police car with his pants still down at his ankles. He explained that since he was handcuffed and his pants were down, he had to enter the vehicle by leaning back and jumping backwards in the seat. He then claimed that once the officer slammed the door[,] the window shattered. [Appellant] explained that he didn't drive the vehicle in question often, as it

- 6 -

was usually loaned to friends and family. He stated that he only drove it on the day of the incident because of the snow. He stated that the car was already parked at his house when he left for school, but then he stated that it was dropped off to him by one of his brothers. [Appellant] claimed that he did not know where the key to the vehicle was, but was able to get a spare key from his house, even though he did not drive the car often. [The trial] [c]ourt found [Appellant]'s testimony to be entirely incredible due to the contradictory and illogical nature of [his] testimony.

(Trial Court Opinion, 6/6/18, at 1-7).

[Procedurally, on January 29, 2016, t]he Commonwealth charged Appellant with resisting arrest at [docket No. 3364-2016, and charged him with firearms violations and recklessly endangering another person (REAP) at docket No. 3376-2016. After obtaining evidence that shell casings which were tied to the firearm from Appellant's car were found in a nearby house, on October 11, 2016, the Commonwealth charged Appellant at docket No. 10937-2016 with aggravated assault, possession of firearm prohibited, firearms not to be carried without a license, discharging a firearm into an occupied structure, and criminal mischief. The trial court granted the Commonwealth's motion to withdraw charges from docket No. 3376-2016, all of which had been included at docket No. 10937-2016].[2] Appellant filed a motion to suppress the seized physical evidence, which the trial court denied following a hearing on April 11, 2017. Appellant's non-jury trial was held on May 24, 2017, where he was convicted of [resisting arrest, carrying a firearm without a license, carrying a firearm on the streets of Philadelphia, persons not to possess firearms, simple assault, REAP, and criminal mischief]. On August 11, 2017, the trial court sentenced Appellant to 5-10 years' incarceration for person not to possess a firearm, a concurrent 1-2 years' incarceration for resisting arrest, and a consecutive term of 1-2 years' incarceration for carrying a firearm without a license. The court imposed 4 years' probation consecutive to Appellant's incarceration for carrying a firearm on the streets of Philadelphia, and concurrent terms of probation of 2 years'

each for simple assault and REAP. Appellant filed a timely post-sentence motion, which the court denied on October 4, 2017.

> [2] At [docket No.] 13500-2009, the trial court determined that Appellant had violated his probation due to his new convictions at [docket No.] 3364-2016 and [docket No.] 10937-2016, and imposed a term of 6-12 months' incarceration. …

*Commonwealth v. Johnson*, No. 3007 EDA 2017, 2019 WL 3992467, unpublished memorandum at *1-4 (Pa.Super. filed Aug. 23, 2019), *appeal denied*, 657 Pa. 477, 226 A.3d 93 (2020). On August 23, 2019, this Court affirmed Appellant's judgment of sentence and on December 11, 2019, our Supreme Court denied allowance of appeal. *See id.*

Appellant filed a timely *pro se* PCRA petition at each underlying docket on February 14, 2021. The court appointed counsel, who filed an amended PCRA petition on June 13, 2021. The PCRA court conducted evidentiary hearings on December 13, 2021, January 3, 2022, January 11, 2022, March 29, 2022, August 18, 2022, and September 20, 2022, and entered an order dismissing the petition at docket No. 3364-2016 and docket No. 10937-2016 on October 28, 2022.[1] On January 13, 2023, the PCRA court issued notice of its intent to dismiss the PCRA petition at docket No. 13500-2009, and on February 15, 2023, the PCRA court dismissed the petition at that docket.

_____

[1] On November 27, 2022, Appellant filed a timely notice of appeal at docket No. 3364-2016 (related to Appellant's resisting arrest conviction and sentence), which is pending in this Court at No. 2963 EDA 2022.

Appellant filed *pro se* notices of appeal on March 9, 2023 at docket Nos. 13500-2009 and 10937-2016.[2] The trial court did not order a Pa.R.A.P. 1925(b) concise statement at either of these underlying dockets.[3]

_____

[2] Although Appellant's appeal from docket No. 10937-2016 appears to be untimely on its face, we note that there are no entries on the trial court docket indicating service of the October 28, 2022 PCRA dismissal order on Appellant. *See* Pa.R.Crim.P. 114(C)(2)(c) (docket entries "shall contain" the "date of service of the order"); Pa.R.Crim.P. 907(4) (stating: "When the [PCRA] petition is dismissed without a hearing, the judge promptly shall issue an order to that effect and shall advise the defendant by certified mail, return receipt requested, of the right to appeal from the final order disposing of the petition and of the time limits within which the appeal must be filed. The order shall be filed and served as provided in Rule 114"). In **Commonwealth v. Midgley**, 289 A.3d 1111, 1117 (Pa.Super. 2023), this Court held that "[w]here the trial court docket in a criminal case does not indicate service on a party or the date of service, we will not quash the appeal or require further proceedings. Rather, we will treat the time in which to take an appeal as never having started to run and treat the appeal as timely." **Id.** Under these circumstances, we decline to quash Appellant's appeal at docket No. 10937-2016 and will treat his notice of appeal as timely filed. **See id.**

We further note that Appellant also filed a duplicative appeal on March 9, 2023 at docket No. 3364-2016, docketed in this Court at 766 EDA 2023. This Court later quashed the appeal at 766 EDA 2023. As discussed earlier, Appellant's timely appeal from docket No. 3364-2016 is pending in this Court at docket No. 2963 EDA 2022. Also on March 9, 2023, Appellant filed an appeal at docket No. 3376-2016, docketed in this Court at 764 EDA 2023. This Court later quashed the appeal at docket 764 EDA 2023. As discussed earlier, the charges at underlying docket No. 3376-2016 were ultimately *nolle prossed*.

[3] We disagree with the Commonwealth's suggestion that Appellant should have assumed he was supposed to file concise statements at these underlying dockets where the trial court ordered a concise statement at docket No. 3364-2016. The court did not order Appellant to file a concise statement at docket Nos. 10937-2016 and 13500-2009, so Appellant was not obligated to do so.

- 9 -

Appellant raises four issues on appeal:[4]

> 1. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented to establish that trial counsel was ineffective for failing to present impeachment evidence, file appropriate motions to dismiss charges and suppress evidence, and protect [A]ppellant's Fourth and Sixth Amendment rights, as well as his due process rights.
>
> 2. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented to establish that appellate counsel was ineffective for failing to preserve all appropriate issues for appeal.
>
> 3. Whether the PCRA court erred by dismissing [A]ppellant's PCRA petition when clear and convincing evidence was presented to establish violations of [A]ppellant's constitutional rights at trial under the United States and Pennsylvania Constitutions. Appellant's Fourth Amendment rights were violated by an unreasonable search and seizure. Appellant's constitutional right to due process was violated by prosecutorial misconduct based on the Commonwealth's presentation of perjured testimony, as well as the intentional manipulation of his speedy trial rights through the subsequent filing of duplicative charges.
>
> 4. Whether the PCRA court erred by dismissing [A]ppellant's PCRA petition when clear and convincing evidence was presented to establish that [A]ppellant was convicted in a proceeding by a tribunal without proper jurisdiction, as the Commonwealth failed to properly establish the jurisdiction of the trial court through the filing and service of proper bills of information.

(Appellant's Brief at 9).

"Our standard of review of the denial of a PCRA petition is limited to

_____

[4] As Appellant raises the same issues presented in both above-captioned cases, we address these appeals together.

- 10 -

examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." ***Commonwealth v. Beatty***, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218 A.3d 850 (2019). This Court grants great deference to the factual findings of the PCRA court if the record contains any support for those findings. ***Commonwealth v. Howard***, 249 A.3d 1229 (Pa.Super. 2021). "[W]e review the court's legal conclusions *de novo*." ***Commonwealth v. Prater***, 256 A.3d 1274, 1282 (Pa.Super. 2021).

In Appellant's first issue on appeal, Appellant raises several claims of trial counsel's ineffectiveness. Initially, Appellant claims that trial counsel was ineffective for failing to introduce impeachment evidence when cross examining Officer Sulock during trial. Specifically, Appellant argues that Officer Sulock testified at the preliminary hearing that he was on Frankford Avenue when he saw Appellant traveling at a high rate of speed and turning onto Stella Street. At the second preliminary hearing, the officer described Appellant as travelling at a normal rate of speed. Then at trial, Officer Sulock testified that while he was driving on Stella Street, Officer Sulock saw Appellant and made a u-turn to follow him. Appellant insists that if counsel had impeached the officer with these inconsistent statements, together with photographs showing that Stella Street is a narrow one-way street, Officer Sulock's credibility would have been called into question. Appellant claims that trial counsel has no reasonable basis for depriving him of his right to

meaningfully confront this witness. Appellant asserts that he was prejudiced by counsel's decision because if the trier of fact had been aware of the contradictory nature of the arresting officer's prior testimony, it would have undermined the officer's credibility and given rise to reasonable doubt. Appellant concludes trial counsel was ineffective on this basis. We disagree.

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524,

645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting ***Commonwealth v. Geathers***, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." ***Commonwealth v. Kelley***, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting ***Pierce, supra*** at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

***Commonwealth v. King***, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting ***Sandusky, supra*** at 1043-44).

"To show prejudice, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's allegedly unprofessional conduct, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Commonwealth v. W. Johnson***, 635 Pa. 665, 710, 139 A.3d 1257, 1284 (2016) (quoting ***Commonwealth v. Baumhammers***, 625 Pa. 354, 92 A.3d 708, 725 (2014)).

Instantly, the record reflects that trial counsel conducted a lengthy cross-examination of Officer Sulock, during which he attempted to impeach Officer Sulock's credibility by highlighting the inconsistencies between Officer Sulock's testimony at trial and his testimony at the preliminary hearing. For example, counsel highlighted that Officer Sulock testified at the preliminary hearing that individuals were fighting before the shooting, but in his trial testimony the officer stated that they were just shouting. (N.T. Trial, 5/24/17, at 44). Additionally, counsel brought to light that Officer Sulock testified at the preliminary hearing that the witness told him "males" where shooting, whereas at trial he testified that the witness said "people" were shooting. (*Id.* at 46-47). Trial counsel questioned Officer Sulock about which street he was driving on when the officer first saw Appellant's car, but counsel did not highlight any inconsistencies with the officer's preliminary hearing testimony on that fact. (*Id.* at 28-51).

On this record, we cannot say that Appellant suffered prejudice as a result of trial counsel's failure to impeach Officer Sulock's credibility on the grounds alleged, where counsel already pointed out other inconsistencies in the officer's testimony. Specifically, Appellant has not shown that there is a reasonable probability that if trial counsel had questioned Officer Sulock concerning inconsistencies in his description of which street he was on when he first saw Appellant that the trial court, as finder of fact, would have found Officer Sulock incredible and instead believed Appellant's version of events.

***See W. Johnson, supra***.    Therefore, as Appellant failed to establish prejudice, his first ineffective assistance claim fails.

In his second claim of ineffective assistance of counsel, Appellant argues that trial counsel was ineffective for failing to file a Rule 600 motion to dismiss. Appellant asserts that a Rule 600 claim would merit relief because he was tried 481 days after his arrest, and the Commonwealth cannot establish that it exercised due diligence during the pretrial period.  Appellant argues that the Commonwealth knowingly filed duplicative charges, and then *nolle prossed* the initial charges, in order to make it appear that Appellant's speedy trial right had not been violated.  Appellant insists that counsel's failure to file a motion to dismiss on this ground had no reasonable basis because no competent lawyer would fail to pursue a motion under such circumstances. Therefore, Appellant contends that he is entitled to relief.  We disagree.

A petitioner bears the burden of demonstrating that there was arguable merit to the proposed motion, which, in the case of an allegation that counsel should have filed a Rule 600 motion, includes the burden of showing that the Commonwealth failed to exercise due diligence.    ***Commonwealth v. Wiggins***, 248 A.3d 1285, 1289 (Pa.Super. 2021), *appeal denied*, ___ Pa. ____, 263 A.3d 546 (2021).  "Opining, without evidence, that it is possible that the Commonwealth failed to do so does not satisfy this burden."  ***Id.*** at 1290.

Instantly, Appellant has not meaningfully developed this claim of

- 15 -

ineffectiveness such that this Court can evaluate whether it may have merited relief if counsel had raised the issue before the trial court. Rather than delineate which periods of delay should have been attributed to the Commonwealth, Appellant simply contends that the entire pretrial period must be attributed to the Commonwealth, and the Commonwealth cannot claim that they were due diligent during this entire period. Aside from a boilerplate assertion that the Commonwealth cannot establish that it exercised due diligence because duplicative charges were filed and then *nolle prossed*, Appellant offers no assessment of the Commonwealth's due diligence during any specific pretrial period. Appellant offers nothing to support his accusation that the prosecutor knowingly filed the duplicative charges with the intention of manipulating the computation of pretrial time, and his baseless accusations are insufficient to satisfy his burden under the PCRA. Accordingly, Appellant has not established that he is entitled to relief.[5]

_____

[5] Moreover, even if Appellant had properly developed this claim on appeal, he failed to ensure that the certified record contained the transcript of the PCRA hearing during which the PCRA court set forth its reasoning and decision concerning the Rule 600 claim. "This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record." **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa.Super. 2006), *appeal denied*, 591 Pa. 663, 916 A.2d 632 (2007) (citation omitted). Furthermore, "[o]ur law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Id.** Accordingly, Appellant has also waived this claim for failing to ensure that the record contained a transcript of the hearing where the court set forth its reasoning and decision. **See Commonwealth v.**
*(Footnote Continued Next Page)*

In his third claim of ineffective assistance of counsel, Appellant contends that trial counsel was ineffective for failing to pursue a suppression motion based on alleged false statements in the affidavit of probable cause. Appellant asserts, without specificity, that the information set forth by the affiant Detective Dusack was never corroborated and the information provided by Officer Sulock was false and misleading. Appellant argues that Officer Sulock's contradictory statements between his preliminary hearing and trial testimony proved that there were false statements in the affidavit of probable cause and established grounds to invalidate the arrest warrant. Therefore, he claims trial counsel was ineffective for failing to insist upon a ***Franks***[6] hearing to challenge the affidavit of probable cause, and there was no reasonable basis for counsel failing to do so. We disagree that relief is due.

Counsel will not be found ineffective for failing to file a motion to suppress if the grounds asserted for that motion lack merit. ***Commonwealth v. Watley***, 153 A.3d 1034, 1044 (Pa.Super. 2016), *appeal denied*, 641 Pa. 750, 169 A.3d 574 (2017). "The defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." ***Id.*** (citation omitted).

---

***Gonzalez***, 109 A.3d 711, 725 (Pa.Super. 2015), *appeal denied*, 633 Pa. 763, 125 A.3d 1198 (2015).

[6] ***Franks v. Delaware***, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

This Court has explained:

> Under the federal and state constitutional prohibitions of unreasonable searches and seizures, both the United States Supreme Court and this Court have consistently held that, subject to certain exceptions, a search is constitutionally invalid unless it is conducted pursuant to a warrant issued by a neutral and detached magistrate and supported by probable cause. Probable cause exists where, based upon a totality of the circumstances set forth in the affidavit of probable cause, including the reliability and veracity of hearsay statements included therein, there is a fair probability that...evidence of a crime will be found in a particular place. In reviewing an issuing authority's decision to issue a warrant, a suppression court must affirm unless the issuing authority had no substantial basis for its decision.

*Commonwealth v. Fletcher*, 307 A.3d 742, 746 (Pa.Super. 2023), *appeal denied*, ___ Pa. ____, ___ A.3d _____ (2024) (quoting *Commonwealth v. Lyons*, 622 Pa. 91, 110, 79 A.3d 1053, 1063-1064 (2013), *cert. denied*, 572 U.S. 1048, 134 S.Ct. 1792, 188 L.Ed.2d 761 (2014)).

> [T]he question of whether probable cause exists for the issuance of a search warrant must be answered according to the totality of the circumstances test articulated in *Commonwealth v. Gray*, [509 Pa. 476, 503 A.2d 921 (1985)], and its Pennsylvania progeny, which incorporates the reasoning of the United States Supreme Court in *Illinois v. Gates*, [462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)]. The task of the magistrate acting as the issuing authority is to make a practical, common sense assessment of whether, given all the circumstances set forth in the affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place. A search warrant is defective if the issuing authority has not been supplied with the necessary information. The chronology established by the affidavit of probable cause must be evaluated according to a common sense determination.

*Id.* (quoting ***Commonwealth v. Harlan***, 208 A.3d 497, 505 (Pa.Super. 2019)).

> With respect to a defendant's entitlement to a ***Franks*** hearing:
>
>> [W]here a defendant makes a substantial preliminary showing that a false statement was knowingly and deliberately, or with reckless disregard for the truth, included by an affiant in his application for a search warrant and where the alleged false statement was necessary to a finding of probable cause, the Fourth Amendment requires that a hearing be held at defendant's request so that he might challenge the veracity and integrity of the warrant.

*Id.* at 747 (quoting ***Commonwealth v. Iannaccio***, 505 Pa. 414, 430 n.4, 480 A.2d 966, 974 n.4 (1984)). In ***Franks***, the United States Supreme Court held that, to mandate an evidentiary hearing "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." ***Franks, supra*** at 171, 98 S.Ct. at 2684.

Instantly, Appellant has not specified which specific portions of the affidavit of probable cause were allegedly false or misleading. As such, he has not met his burden of establishing entitlement to a ***Franks*** hearing. ***See id.*** Furthermore, to the extent that Appellant is referring to Officer Sulock's varying account of which road he was driving on when he encountered Appellant's vehicle, Appellant has provided no evidence that any such misstatement was made knowingly and deliberately, or with reckless

disregard for the truth. **See Fletcher, supra**. Thus, Appellant cannot show that counsel was ineffective because he has not established that his underlying claim would merit relief. Accordingly, Appellant's first issue raising claims of trial counsel's ineffectiveness merits no relief.

In his second issue on appeal, Appellant asserts a layered claim of ineffective assistance of counsel, arguing that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness. Rather than setting forth specific grounds of appellate counsel's ineffectiveness, however, Appellant broadly asserts that appellate counsel was ineffective based on "counsel's failure to preserve the multiple claims arising from the various constitutional violations at trial." (Appellant's Brief at 23). Appellant claims that the deficiencies in appellate counsel's brief on direct appeal equates to *per se* ineffective representation, and therefore he is not required to satisfy the traditional three prong analysis for an ineffectiveness claim. Alternatively, Appellant argues that even if he is required to prove the traditional three prong test, his claim has merit because appellate counsel's failure to preserve all claims deprived Appellant of his right to appeal, counsel's failure to perfect the appeal was *de facto* unreasonable, and he suffered prejudice because counsel's inadequate brief caused a complete default of the direct appeal. (**Id.** at 24-25). Appellant concludes appellate counsel was ineffective, and this Court must grant relief. We disagree.

This Court has explained *per se* ineffective assistance of counsel as

follows: In those "extreme circumstances, where counsel has effectively abandoned his or her client and cannot possibly be acting in the client's best interests, our Supreme Court has held that the risk should fall on counsel, and not his client." ***Commonwealth v. Grosella***, 902 A.2d 1290, 1293 (Pa.Super. 2006). Conversely, "[w]here a petitioner was not entirely denied his right to a direct appeal and only some of the issues the petitioner wished to pursue were waived, the reinstatement of the petitioner's direct appeal rights is not a proper remedy." ***Id.*** at 1293-94 (collecting cases distinguishing between those involving failures that completely foreclosed appellate review with those that merely narrowed its ambit). ***See also Commonwealth v. Rosado***, 637 Pa. 424, 435, 150 A.3d 425, 431 (2016) (distinguishing between deficient advocacy which waived all claims for purpose of appeal, which is ineffective *per se*, from failure to preserve some claims, which does not constitute ineffectiveness *per se*). In those cases where counsel did not effectively abandon the appellant, this Court has held that "the PCRA court should have considered [the a]ppellant's ineffective assistance of appellate counsel claims under the auspices of the PCRA and applied the traditional three-prong ineffective assistance of counsel test." ***Grosella, supra*** at 1294 (internal footnote omitted).

Further:

> [T]o demonstrate that a "layered" claim of appellate counsel's ineffectiveness has arguable merit, the petitioner must develop all three prongs of the ***Pierce*** test as to the ineffectiveness of trial counsel. Stated differently, if the

> petitioner fails to develop any of the three **Pierce** prongs regarding the underlying issue of trial counsel ineffectiveness, he or she will have failed to establish the arguable merit prong of the claim of appellate counsel's ineffectiveness. Only when the petitioner has adequately pled and presented the ineffectiveness of trial counsel pursuant to the **Pierce** test will this Court proceed to review the layered claim to determine whether he or she has proven appellate counsel's ineffectiveness.

**Commonwealth v. Brown**, 582 Pa. 461, 474, 872 A.2d 1139, 1146 (2005) (citations and footnotes omitted).

Instantly, appellate counsel did not completely abandon Appellant on appeal, as counsel preserved challenges to the sufficiency of the evidence and the suppression of evidence. **See Johnson, supra**.[7] Thus, counsel's performance was not ineffective *per se*. **See Grosella, supra**. **See also Rosado, supra**. Accordingly, Appellant was required to establish appellate counsel's ineffectiveness under the traditional three prong test. **See Grosella, supra**.

Although Appellant claims that appellate counsel erred in failing to "preserve the Fourth Amendment, due process, or speedy trial issues" (**see** Appellant's Brief at 23), he does not establish how any of these claims would merit relief. **See Smith, supra**. Further, Appellant has not sufficiently pled

_____

[7] **See id.** (addressing challenges to sufficiency of evidence for firearm offenses, simple assault, and REAP; deeming one issue related to sufficiency of evidence for resisting arrest waived for failure to develop claim on appeal; addressing challenge to suppression of evidence). Notably, the sufficiency challenge waived on direct appeal relates to the resisting arrest underlying docket, which is not the subject of this appeal.

a layered claim of ineffectiveness to entitle him to relief. *See Brown, supra*.

Therefore, Appellant's second issue on appeal merits no relief.

In his third issue on appeal, Appellant claims that his due process rights were violated when the Commonwealth introduced perjured testimony from Officer Sulock concerning the streets upon which Appellant and the officer were driving. Appellant insists that Officer Sulock's testimony was materially false and that the Commonwealth had reason to question his integrity. Appellant further avers that the prosecutor's manipulation of the Rule 600 run date constituted prosecutorial misconduct and violated Appellant's due process rights. Although Appellant acknowledges that neither issue was raised on direct appeal, he argues that these claims involve important constitutional rights and suggests they are not subject to waiver. We disagree.

Section 9544(b) of the PCRA states that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b). Indeed, "the very terms of the PCRA exclude waived issues from the class of cognizable PCRA claims. [*See*] 42 Pa.C.S.[A.] § 9543(a)(3) (to be eligible for relief under PCRA, a petitioner must prove that the allegation of error has not been waived)." *Commonwealth v. Bracey*, 568 Pa. 264, 274, 795 A.2d 935, 941 (2001).

Instantly, Appellant did not raise either of the claims asserted in this appellate issue for review on direct appeal. Consequently, they are waived.

*See* 42 Pa.C.S.A. §§ 9544(b); 9543(a)(3); ***Bracey, supra***.

In his fourth and final issue, Appellant argues that the PCRA court erred when it dismissed his PCRA petition because the Commonwealth failed to properly establish the jurisdiction of the trial court. Specifically, Appellant claims that the indictment charging him at docket No. 10937-2016 was invalid because it lacked a required bill of information. Therefore, Appellant insists that he was entitled to relief pursuant to 42 Pa.C.S.A. § 9543(a)(2)(viii) because the trial court lacked proper jurisdiction. We disagree.

Claims that a conviction or sentence resulted from a proceeding in the trial court without jurisdiction are cognizable under the PCRA. 42 Pa.C.S.A. § 9543(a)(2)(viii). "The term 'jurisdiction' relates to the competency of an individual court or administrative body to determine controversies of the general class to which a particular case belongs." ***Commonwealth v. McNeil***, 665 A.2d 1247, 1251 (Pa.Super. 1995). "Subject matter jurisdiction in the trial court exists by virtue of presentation of *prima facie* evidence that a criminal act occurred within the territorial jurisdiction of the court." ***Id.***

In ***Commonwealth v. Jones***, 593 Pa. 295, 298, 929 A.2d 205, 206 (2007), our Supreme Court held that a flaw in the bill of information did not deprive the trial court of subject matter jurisdiction. Rather, the Court addressed the purported flaw in the bill of information as implicating the appellant's due process rights regarding whether the appellant was provided with notice of the charges against him.

Instantly, Appellant cites no law to support his claim that the alleged lack of a bill of information divested the trial court of subject matter jurisdiction. Notably, the cases on which Appellant relies have nothing to do with a bill of information. As Appellant's claim here implicates due process rights, and not the trial court's subject matter jurisdiction, Appellant's claim is waived for failure to challenge the alleged lack of a bill of information on direct appeal. ***See id. See also*** 42 Pa.C.S.A. 9543. Accordingly, Appellant is not entitled to relief on any of his claims on appeal and we affirm.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2024