**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW RICHARD BIZON | : | |
| | : | |
| Appellant | : | No. 3072 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 6, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0005110-2022

BEFORE:  DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY DUBOW, J.:                **FILED SEPTEMBER 12, 2024**

Appellant Andrew Richard Bizon appeals from the judgment of sentence of 5 to 10 years' incarceration imposed after a jury convicted him of numerous firearms offenses.  He challenges the denial of his suppression motion.  After careful review, we affirm.

**A.**

We glean the factual and procedural history from the trial court's Pa.R.A.P. 1925(a) opinion and the certified record.  In late summer of 2022, Chief McClay of the Morrisville Police Department contacted Bucks County Detective Steve Ortman for assistance in investigating a report that Appellant was stockpiling weapons, using heroin, and receiving questionable items through the mail at his home where he lived with his mother.  Detective Ortman discovered that Appellant had a prior record that prohibited him from possessing firearms.  Working with investigators from the U.S. Postal Service,

Detective Ortman obtained photographs of parcels sent from various firearm manufacturing companies addressed to 112 Harper Avenue in Morrisville, Appellant's residence. Detectives investigated the companies listed on the return addresses and learned that they manufactured and sold weapons as well as firearm parts from which buyers could assemble "ghost" guns.

In light of the report of heroin use, Detective Ortman and Bucks County Detective Brian Bielecki, both of whom worked with the Drug Strike Force of the Bucks County District Attorney's Office, conducted trash "pulls" from garbage cans left out on the street in front of Appellant's home on two separate days and discovered heroin paraphernalia, numerous plastic and glassine baggies containing what appeared to be heroin residue, burnt aluminum foil squares, and small rubber bands. The glassine bags were stamped with either a "Sonic the Hedgehog" logo or the word "Power" with a fist logo which Detective Bielecki recognized as associated with the purchase and use of heroin/fentanyl. Detective Ortman later spoke with the original anonymous source via telephone, an individual known to Detective Bielecki. The source wished to remain anonymous for safety reasons.

Following the above investigation, Detective Bielecki applied for a search warrant for Appellant's home and attached his 9-page affidavit of probable cause which included the above detail of the investigation and a recitation of his law enforcement experience in drug and gun investigations. The court approved the application and on August 4, 2022, Detective Bielecki and other officers proceeded to Appellant's residence to execute the search warrant.

They waited until Appellant left the residence where they detained him and then proceeded to search Appellant's home.

Detective Bielecki stayed with Appellant outside the home to monitor him. Aware that Appellant had a drug addiction, Detective Bielecki asked Appellant if he was feeling okay and if he was going to be sick, to which Appellant responded that he was not going through withdrawal but would soon become sick. Appellant then made unprompted incriminating statements, telling the police officers that anything they were looking for would be in his bedroom and asking them not to tear up his mother's house.

During the search, police officers found three homemade firearms and ammunition in Appellant's bedroom and two other firearms in the residence, along with packing slips from firearm manufacturers and parts and tools for assembling firearms. Police officers arrested Appellant and took him into custody.

While in custody, Appellant agreed to speak with investigators. Just prior to Detective Jerrod Eisenhauer reading Appellant his ***Miranda***[1] rights, Appellant stated "if anything happens that I don't agree with, I'm going to stop talking." Tr. Ct. Op., dated 3/5/24, at 5, citing N.T. Suppression Hr'g, 5/31/23, at 51. Detective Eisenhauer responded that Appellant could stop answering questions whenever he wanted and then read Appellant his ***Miranda*** rights. Appellant confirmed orally that he was willing to speak to

_____

[1] ***Miranda v. Arizona***, 383 U.S. 903 (1966).

Detectives Eisenhauer and Ryan Naugle without an attorney present and initialed and signed a *Miranda* card indicating that he understood each of the rights he was waiving.

During the interview, Appellant admitted that he bought the ghost gun kits online, and after they arrived through the postal system, he built the guns. He also admitted that he possessed five guns (three pistols and two rifles) and acknowledged that he had a prior felony conviction. Suppression Hr'g Ex. CS-4, at 3:51-13:14. When Detective Eisenhauer asked him for details about how guns are assembled, claiming he was asking because he knew nothing about building guns, Appellant told the detectives he felt like he was being set up and he did not want to talk. *Id*. at 13:14. Detective Eisenhauer then asked, "Do you want a lawyer?" and Appellant responded, "I don't know." *Id*. The detectives continued to speak with Appellant and shortly thereafter Detective Eisenhauer said, "You asked for an attorney so I'm not comfortable continuing." *Id*. at 14:11. Appellant then again stated, "I feel like you're setting me up," and the detective said, "you don't have to talk to me." *Id*. at 15:01. Detective Eisenhauer then asked Appellant, "Do you want to continue to talk to us?" to which Appellant again responded, "I feel like you're setting me up." *Id*. at 15:26. The interview continued with discussion of Appellant's drug supplier and whether he would be willing to act as a confidential informant in a drug buy.

The Commonwealth charged Appellant with drug offenses and, most relevant to this appeal, five counts of Persons Not to Possess, Use,

Manufacture, Control, Sell or Transfer Firearms, and one count of Possessing Instruments of Crime.[2] Appellant filed an Omnibus Pretrial Motion to suppress the evidence seized from the search of his home, contending that at no time had anyone seen him outside the home and the trash pull had yielded no gun paraphernalia or packaging. He also sought to suppress the statements he made to law enforcement while in custody, alleging that he had asked for a lawyer during the interview so questioning should have ceased.

On May 31, 2023, the suppression court held a hearing at which Detectives Ortman, Bielecki, and Eisenhauer testified in accordance with the above facts. The court also listened to the audiotape of Appellant's interview with Detectives Eisenhauer, reviewed the search warrant and affidavit of probable cause, and heard argument from counsel. The court denied Appellant's motion to suppress, finding that the search warrant was valid, supported by probable cause, and was not tainted by any improper investigative methods. N.T. Suppression Hr'g at 64-65. The court also concluded that "[w]hile things did get contentious at the end of the interview, and it did seem as if there was some back and forth between the detectives and defendant, the defendant never unequivocally invoked his right to counsel, and never invoked the right to end the questioning." *Id*. at 66.

Appellant proceeded to a two-day trial on July 17, 2023, after which a jury convicted him of the above crimes. On September 6, 2023, the court

_____

[2] 18 Pa.C.S. §§ 6105(a)(1) and 907(a), respectively. The court severed the drug offenses.

sentenced Appellant to an aggregate term of 60 to 120 months' incarceration with credit for time served and directed, *inter alia*, that he obtain drug and alcohol counseling. Appellant filed a post-sentence motion for reconsideration, which the court denied after a hearing on October 25, 2023.

**B.**

Appellant timely appealed. Both Appellant and the trial court complied with Rule 1925. Appellant raises the following issues for our review:

A. Did the trial court err in denying Appellant's Omnibus Pre-Trial Motion to Suppress where the search warrant for Appellant's residence was not supported by probable cause?

B. Did the trial court err in denying Appellant's Omnibus Pre-Trial Motion to Suppress his statements where the interrogation continued after Appellant invoked his right to an attorney pursuant to **Miranda v. Arizona**?

Appellant's Br. at 4.

**C.**

In both of his issues, Appellant asserts that the court erred in denying his Omnibus Motion to Suppress. Our review of a challenge to the denial of a suppression motion is limited to "determining whether the Suppression Court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010). This Court is bound by the factual findings of the suppression court, but we are not bound by its legal conclusions, which we review *de novo*. **Commonwealth v. Briggs**, 12 A.3d 291, 320-21 (Pa.

2011). We may review only "the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019) (citation omitted).

### D.

Appellant first argues that the search warrant was not supported by probable cause. Appellant's Br. at 11-16. He contends the anonymous source was not reliable, it was "mere conjecture with little to no basis in fact" that the gun parts were shipped to 112 Harper Avenue, and the trash pulls revealed no gun parts, therefore, the "four corners of the search warrant fails to provide probable cause to justify this search[.]" *Id*., at 15-16.

It is well-established that "[n]o search warrant shall issue but upon probable cause supported by one or more affidavits[.]" Pa.R.Crim.P. 203(B). "Probable cause exists where, based upon a totality of the circumstances set forth in the affidavit of probable cause, including the reliability and veracity of hearsay statements included therein, there is a fair probability that. . . evidence of a crime will be found in a particular place." *Commonwealth v. Fletcher*, 307 A.3d 742, 746 (Pa. Super. 2023) (citation omitted). "[T]he task of the issuing magistrate is simply to make a practical, common-sense decision[.] And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Commonwealth v. Gray*, 503 A.2d 921, 925 (Pa. 1985) (internal brackets

and ellipsis omitted) (quoting ***Illinois v. Gates***, 462 U.S. 213, 238-39(1983)).

"A police officer's experience may fairly be regarded as a relevant factor in determining probable cause." ***Commonwealth v. Randolph***, 151 A.3d 170, 183 (Pa. Super. 2016) (citation omitted). In addition, when the affidavit of probable cause alleges facts obtained from an anonymous source, the magistrate judge weighs the basis of knowledge and the veracity of the source. ***Gates***, 462 U.S. at 244-45. "The very foundation of the ***Gates*** totality test is the recognition that all relevant factors go into the probable cause mix." ***Commonwealth v. Thompson***, 985 A.2d 928, 935 (Pa. 2009). Again, the reviewing court should defer to the magistrate's probable cause determination if she had a substantial basis for reaching her conclusion. ***Gates***, 462 U.S. at 236, 238.

Authorities may prove the reliability and veracity of information received from an anonymous source with independent corroboration. ***See Commonwealth v. Sanchez***, 907 A.2d 477, 488 (Pa. 2006) (determining that investigation corroborated the information that police received from an unnamed witness supporting a reasonable inference that the witness had knowledge of the crime); ***see also Commonwealth v. Klimkowicz***, 479 A.2d 1086, 1088 (Pa. Super. 1984) (observing that an affidavit of probable cause may be based on hearsay evidence provided that evidence is corroborated) (citations omitted); ***Harlan***, 208 A.3d at 507 (finding that both

surveillance of the suspect's property and acquisition of a court order for accessing the property's electrical usage corroborated the informant's allegation that suspect was growing marijuana, which allowed authorities to obtain a search warrant sufficiently supported by probable cause).

In the case now before us, we find no reason to disturb the magistrate's probable cause determination. Detective Bielecki knew the anonymous source, the information received from the source was corroborated by police and post office investigations that revealed shipments from firearms manufacturers to Appellant at 112 Harper Avenue, and Appellant is a person not to possess firearms. Moreover, as the affidavit of probable cause indicates, the detectives involved are experienced in the investigation of drug and gun crimes and the trash pulls revealed evidence of illicit drug packaging and use. Under the totality of the circumstances, the magistrate had a "substantial basis" to determine that the detectives had established that it was more likely than not that Appellant was involved in criminal activity so as to support the issuance of the search warrant. Accordingly, Appellant first issue warrants no relief.

**D.**

Appellant next contends that during the interview with the detectives at the police station, Appellant "clearly, affirmatively, and unambiguously indicated that he wished to consult with a lawyer" but Detective Eisenhauer continued the questioning in violation of **Edwards v. Arizona**, 451 U.S. 477,

482 (1981). Appellant's Br. at 18-20. He avers that the court should have suppressed the statements made after he allegedly invoked his Fifth Amendment rights. *Id*. at 17.

The Fifth Amendment of the U.S. Constitution guarantees a suspect the right to remain silent and the right to have counsel present during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444-445 (1966). It is well-settled that law enforcement officials must apprise a suspect of these rights prior to speaking with him about the crime at issue to protect his right against compulsory self-incrimination. *Id.* at 473-74. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id*. at 444.

In *Edwards*, the Supreme Court expanded upon its holding in *Miranda* and held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." 451 U.S. at 484. The Court explained that an accused, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or

conversations with the police." *Id.* at 484–485. *See also Commonwealth v. Champney,* 65 A.3d 386, 387 (Pa. 2013) (same).

In *Commonwealth v. Woodard*, 129 A.3d 480 (Pa. 2015), our Supreme Court noted that whether an accused has invoked the right to counsel is an "objective inquiry." *Id*. at 498 (citing *Davis v. United States*, 512 U.S. 452, 458-59 (1994)). The Court explained that "to invoke the Fifth Amendment right to counsel effectively, the accused must make 'some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police.'" *Id*. at 498 (citation omitted). "If an accused makes a statement concerning the right to counsel that is 'ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Id*. (citation omitted). In reviewing whether a suspect has revoked his waiver of his right to counsel, courts review the totality of the circumstances. *Commonwealth v. Colon*, 846 A.2d 747, 758-59 (Pa. Super. 2004).

"A suppression court's error in failing to suppress statements by the accused, however, will not require reversal if the Commonwealth can establish beyond a reasonable doubt that the error was harmless." *Commonwealth v. Frein*, 206 A.3d 1049, 1070 (Pa. 2019). "*Miranda* violations are subject to this harmless error rule." *Id*. (citing *Commonwealth v. Diaz*, 264 A.2d

- 11 -

592, 594 (Pa. 1970) (**Miranda** violations "do not call for automatic reversal," but are subject to the harmless error rule)).[3]

Appellant does not challenge the validity of his waiver of his **Miranda** rights that occurred prior to questioning by Detective Eisenhauer. Rather, he asserts that after he said "I feel like I should have a lawyer" and "you're making it seem like you're setting me up," the detectives should have stopped speaking to him. Appellant's Br. at 20.

The trial court opined that "Appellant's 'invocation' of his right to an attorney was not clear, unambiguous, and unequivocal." Tr. Ct. Op., dated 3/5/24, at 17. The court observed:

> After Appellant was read his **Miranda** rights and signed the **Miranda** card, he clearly understood his rights. Appellant's supposed invocation of his right to counsel was too ambiguous for Detective Eisenhauer to be aware that Appellant was invoking any **Miranda** rights which would require a cessation of questioning. Even if Detective Eisenhauer had suspected that Appellant may have been invoking his right to an attorney, **Davis** clearly states that he was under no obligation to ask clarifying questions. **See Davis**, 512 U.A. at 461-62. Even so, Detective Eisenhauer's follow up question asking Appellant if he wanted to continue to talk demonstrated good police practice and evidenced his sensitivity to Appellant's **Miranda** rights. Such practice cannot be characterized as improper inducing, as Appellant describes in his statement of errors. As such, this Court did not err in denying

---

[3] **See Frein**, 206 A.3d at 1070 (defining harmless error as "exist[ing] if the Commonwealth proves that (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.").

Appellant's Motion to Suppress statements made after Appellant was given his *Miranda* warnings.

*Id*. at 18.

After our review of the evidence presented at the suppression hearing, we conclude the court's factual findings are supported by the record. Appellant did not explicitly, unequivocally, or clearly ask for an attorney, even after Detective Eisenhauer essentially invited Appellant to do so at least twice during the interview. *See* Ex. CS-1 at 13:14, 15:01-15-26. Moreover, Appellant validly waived his *Miranda* rights at the beginning of the interview, and his subsequent statements and actions did not indicate that he revoked that waiver.[4]

Accordingly, Appellant's second issue warrants no relief and we, thus, affirm his judgment of sentence.

Judgment of Sentence affirmed.

---

[4] Following his waiver, Appellant told the officers he bought the gun kits and assembled the guns, and acknowledged that he was a convicted felon and addicted to heroin. *See* Ex. CS-1, at 0:00-13:13. Thus, even if we were to conclude the court erred in not suppressing whatever statements or evidence the officers obtained following his alleged invocation of his right to an attorney, we would conclude it is harmless error.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date: 9/12/2024