J-S46036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CALVIN MARQUIS TAYLOR | : | |
| | : | |
| Appellant | : | No. 569 WDA 2025 |

Appeal from the PCRA Order Entered March 6, 2025
In the Court of Common Pleas of Venango County Criminal Division at
No(s):  CP-61-CR-0000043-2022

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:                        **FILED: March 17, 2026**

Appellant, Calvin Marquis Taylor, appeals from the order entered in the Venango County Court of Common Pleas, which dismissed his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

A prior panel of this Court set forth the relevant facts of this appeal as follows:

> On January 14, 2022, [Appellant] was driving 90 miles per hour on a 65-mile-per-hour highway in Venango County. The sun was setting, and the temperature was approximately 15 degrees.  Trooper Devin Seybert of the Pennsylvania State Police initiated a traffic stop.  The suppression court found the following facts about the stop:
>
> > [Appellant] used his left turn signal to pullover to the right side of the roadway in response to the lights and sirens of the police vehicle.  Trooper Seybert approached [Appellant's] vehicle and noted the odor

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

of marijuana as well as particles of marijuana in the vehicle. He also noticed that [Appellant's] hand was shaking, [Appellant] was extremely nervous and there were multiple cell phones in the vehicle. Further, the trooper noted that [Appellant's] eyes were glassy and bloodshot, and that the vehicle was a rental in a third party's name. [Appellant] was the sole occupant. [Appellant] refused Trooper Seybert's requests to search the vehicle.

[Appellant] claimed to have a medical marijuana card and admitted to smoking marijuana within the hour preceding the traffic stop. The trooper noted that [Appellant] was "gutting" cigars to smoke the marijuana.

Trooper Seybert had Advance Roadside Impaired Driving Enforcement training and more than 100 hours of training in narcotics investigations. The trooper was aware that it is illegal to smoke medical marijuana and unlawful to keep it in any other container besides the original dispensary packaging.[2]

The trooper conducted two field sobriety tests. He indicated that the temperature was around 15° and he did not wish to conduct any additional field tests with [Appellant]. Trooper Seybert concluded that [Appellant] was under the influence of marijuana.

[Appellant] was then informed that he was under arrest on a charge of Driving Under the Influence [("DUI")]. Upon hearing this, [Appellant] pushed away from the trooper and re-entered his vehicle and attempted to start it. As the trooper and an additional back-up trooper attempted to wrestle [Appellant] from the vehicle, he slipped through his shirt and fled

---

[2] This Court has "recognized the [Medical Marijuana Act] does not permit the smoking of marijuana; therefore, the police's knowledge that the defendant had paraphernalia for smoking marijuana gave the officer reason to believe the marijuana was being used illegally." *Commonwealth v. Cunningham*, 287 A.3d 1, 10 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 302 A.3d 626 (2023).

on foot. Despite police pursuit, [Appellant] crossed the median and eluded the troopers.

Police obtained a warrant to search the vehicle. They found illegal drugs, an electronic scale, and a loaded gun.

[Appellant] ran through the forest for nearly half an hour, eventually reaching the home of Nancy and John Lunnie. [Appellant] did not knock or ring the doorbell. He entered through the unlocked door. Mrs. Lunnie saw [Appellant] standing at the kitchen counter. [Appellant] told Mrs. Lunnie that he had been in an accident and needed help. [Appellant] asked to call his mother. Mrs. Lunnie said she would call the police; he told her not to. He refused her requests to leave.

Although [Appellant] denied touching her, Mrs. Lunnie recalled that [Appellant] tried to grab her phone in a "wrestling match" that left her bruised. Mr. Lunnie retrieved a gun and pointed it at [Appellant]. [Appellant] left the house and walked back to the highway. Trooper Seybert arrested him without further incident.

Trooper Seybert filed a criminal complaint against [Appellant]; the case was held for court. [Although the complaint included one count of DUI—controlled substance, the Commonwealth withdrew this charge prior to trial.] [Appellant] moved to suppress evidence derived from the traffic stop. The suppression court held a hearing on May 10, 2022, and it denied [Appellant's] motion on June 27, 2022.[3]

*Commonwealth v. Taylor*, No. 141 WDA 2023, unpublished memorandum

at 1-3 (Pa.Super. filed May 16, 2024) (record citation omitted).

---

[3] The record on appeal does not include Appellant's suppression motion. Nevertheless, this Court's prior decision explained that Appellant alleged "that Trooper Seybert unlawfully prolonged [Appellant's] detention by conducting field sobriety tests. [Appellant] suggests this was pretext to search his car after he had refused consent to search." *Taylor, supra* at 4.

Following trial, a jury convicted Appellant of burglary, carrying a firearm without a license, attempted robbery, criminal trespass, escape, resisting arrest, and possession of a controlled substance with intent to deliver. On January 3, 2023, the court sentenced Appellant to an aggregate term of one hundred five (105) to two hundred twenty-eight (228) months' imprisonment. On direct appeal, this Court granted partial relief on May 16, 2024, by vacating Appellant's sentence for escape. Specifically, we determined that the sentence should have merged with Appellant's concurrent sentence for burglary. Our action did not disturb the trial court's sentencing scheme, and we affirmed the convictions and judgment of sentence in all other respects. *See id.* Appellant did not seek further review with our Supreme Court.

Appellant timely filed a *pro se* PCRA petition on September 23, 2024. The court appointed counsel, who filed a motion to withdraw and **Turner**/**Finley** "no-merit" letter on November 27, 2024.[4] By opinion and order filed January 17, 2025, the court permitted PCRA counsel to withdraw. The court also provided Appellant with Pa.R.Crim.P. 907 notice of its intent to dismiss the PCRA petition without a hearing. Appellant filed a *pro se* response to the Rule 907 notice on February 10, 2025. On March 6, 2025, the court dismissed Appellant's PCRA petition.

---

[4] **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

On April 3, 2025, Appellant filed a *pro se* notice of appeal.[5] In it, Appellant did not expressly state that he was appealing from the order dismissing his PCRA petition. On April 21, 2025, the PCRA court appointed current counsel. In the same order, the court directed counsel to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Following the grant of an extension, current counsel filed the Rule 1925(b) statement on June 2, 2025.

This Court subsequently inspected the *pro se* notice of appeal and recognized that it failed to identify the PCRA court order at issue. On June 20, 2025, we instructed current counsel to file an amended notice of appeal within ten days. We added that the amended notice of appeal should reference "a properly docketed and appealable order." (Order, filed 6/20/25, at 1). Current counsel timely filed the amended notice of appeal on June 30, 2025.

Appellant now raises four issues for this Court's review:

> Appellate counsel/trial counsel were ineffective in failing to challenge the probable cause that initiated the initial search of the vehicle [Appellant] was driving.
>
> Appellate counsel/trial counsel were ineffective for failing to challenge the resisting arrest charge and the jury verdict finding Appellant guilty thereof, when Appellant argues that the evidence was insufficient to prove that he resisted

---

[5] Although Appellant's notice of appeal was not docketed until April 8, 2025, Appellant was incarcerated when he submitted this filing. Thus, we use the date listed on the certificate of service for his notice of appeal as the operative filing date. **See Commonwealth v. Crawford**, 17 A.3d 1279 (Pa.Super. 2011) (explaining that under "prisoner mailbox rule," we deem *pro se* document filed on date it is placed in hands of prison authorities for mailing).

arrest.

> [Appellate] counsel/trial counsel were ineffective in failing to argue that the evidence presented by the Commonwealth in this case was insufficient to prove that [Appellant] was intending to commit a crime in the house, as required to convict Appellant of burglary.
>
> Appellate counsel/trial counsel were ineffective when trial counsel did not request a jury instruction regarding the concept of "forced entry" for the burglary charge and when appellate counsel failed to include that issue on appeal.

(Appellant's Brief at 1-2).

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." **Commonwealth v. P. Beatty**, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218 A.3d 850 (2019). "[W]e review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, 672 Pa. 30, 268 A.3d 386 (2021).

In his first issue, Appellant acknowledges that the police obtained a search warrant for his vehicle. Appellant insists, however, that the police lacked probable cause to believe the vehicle contained evidence of a crime. Relying on Trooper Seybert's preliminary hearing testimony, Appellant maintains that the facts available to the trooper "included only the smell of

marijuana and one cell phone."[6] (Appellant's Brief at 9). Further, Appellant claims that Trooper Seybert "testified that from the very beginning of the stop he suspected that more than speeding was going on—partially due to the fact that, in his mind, it took [Appellant] some time to pull over." (**Id.**) Appellant disputes this testimony because "[t]he evidence on the dashcam from the police cruiser showed less than a minute of time for [Appellant] to pull over even though he was traveling at … a very high rate of speed."[7] (**Id.**) Under these circumstances, Appellant asserts that trial counsel's suppression motion should have included a challenge to the issuance of the search warrant. Appellant also asserts that he suffered prejudice due to counsel's omission of this argument. (**Id.**) Appellant concludes that prior counsel was ineffective for failing to challenge the probable cause supporting the issuance of the

---

[6] Appellant's brief contains contradictory statements regarding the number of cell phones in the vehicle. Earlier in the argument section for this issue, Appellant summarized Trooper Seybert's testimony and included the trooper's observation of "multiple cell phones in the vehicle." (Appellant's Brief at 7). Our review of the record confirms that Trooper Seybert's exact testimony was that "multiple cell phones in the vehicle caught my attention." (N.T. Preliminary Hearing, 1/26/22, at 9).

[7] At trial, the Commonwealth presented the dashcam video of the traffic stop. (**See** N.T. Trial, 9/27/22, at 50-51). This video, however, was not included with the record for this Court's review. Thus, we cannot review any arguments related to the video due to Appellant's failure to ensure its inclusion in the record. **See Commonwealth v. B.D.G.**, 959 A.2d 362, 372 (Pa.Super. 2008) (en banc) (reiterating that "[o]ur law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete," and "what is not contained in the certified record does not exist for purposes of our review").

search warrant, and this Court must grant relief. We disagree.

"Counsel is presumed to have rendered effective assistance." ***Commonwealth v. Hopkins***, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Commonwealth v. Chmiel***, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has forgone and which forms the basis for the assertion of ineffectiveness is of arguable merit." ***Commonwealth v. Smith***, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852

A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3,

33, 807 A.2d 872, 883 (2002)).

Counsel will not be found ineffective for failing to file a motion to suppress if the grounds asserted for that motion lack merit. ***Commonwealth v. Watley***, 153 A.3d 1034, 1044 (Pa.Super. 2016), *appeal denied*, 641 Pa. 750, 169 A.3d 574 (2017). "The defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." ***Id.*** (citation omitted).

The following principles apply to our review of claims involving search warrants:

> Article I, Section 8 of the Pennsylvania Constitution ensures that citizens of this Commonwealth are protected from unreasonable searches and seizures by requiring that warrants: (1) describe the place to be searched and the items to be seized with specificity and (2) be supported by probable cause to believe that the items sought will provide evidence of a crime.

***Commonwealth v. Johnson***, 662 Pa. 691, 706, 240 A.3d 575, 584 (2020) (internal citations and footnote omitted).

> Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted.

***Commonwealth v. Green***, 204 A.3d 469, 482 (Pa.Super. 2019), *aff'd*, 671 Pa. 1, 265 A.3d 541 (2021) (internal citation and quotation marks omitted).

"The task of the magistrate acting as the issuing authority is to make a

practical, common sense assessment of whether, given all the circumstances set forth in the affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Fletcher*, 307 A.3d 742, 746 (Pa.Super. 2023), *appeal denied*, ___ Pa. ___, 318 A.3d 384 (2024) (quoting *Commonwealth v. Harlan*, 208 A.3d 497, 505 (Pa.Super. 2019)). "In reviewing an issuing authority's decision to issue a warrant, a suppression court must affirm unless the issuing authority had no substantial basis for its decision." *Id.* (quoting *Commonwealth v. Lyons*, 622 Pa. 91, 110, 79 A.3d 1053, 1064 (2013)).

Instantly, the PCRA court determined that probable cause existed to support the issuance of the search warrant due to the following facts:

> Here, Trooper Seybert observed an odor of marijuana emanating from [Appellant's] car, as well as particles of marijuana inside the vehicle. He also noticed that [Appellant's] hand was shaking, [Appellant] was extremely nervous, and there were multiple cell phones in the vehicle. Trooper Seybert noted that [Appellant's] eyes were glassy and bloodshot, and that the vehicle was a rental in a third party's name. [Appellant] voluntarily admitted to smoking marijuana within the hour preceding the traffic stop. [Appellant] fled the scene when Trooper Seybert attempted to arrest [Appellant] for [DUI]. [Appellant] attempted to reenter the vehicle and leave the scene prior to fleeing on foot.

(PCRA Court Opinion, filed 1/17/25, at 7). Our review of Trooper Seybert's testimony confirms the court's conclusions. (*See* N.T. Preliminary Hearing at

6-14; N.T. Suppression Hearing, 5/10/22, at 9-21).[8]    Given these circumstances, there was a fair probability that the trooper would discover contraband inside the vehicle. **_See Fletcher, supra_**.   Thus, there is no arguable merit to Appellant's claim that prior counsel was ineffective for failing to challenge the issuance of the search warrant. **_See Poplawski, supra_**. **_See also Watley, supra_**.

In his second issue, Appellant emphasizes Trooper Seybert's belief that Appellant was driving under the influence of a controlled substance.  Despite the evidence collected by the trooper, the Commonwealth withdrew the DUI charge prior to Appellant's trial.  Appellant insists that the Commonwealth's withdrawal of the DUI charge effectively defeated the additional charge for resisting arrest:

> [T]here was no proof presented by the Commonwealth that Appellant had violated the law when he was leaving the scene of the stop, so there was no justification on the part of law enforcement to detain Appellant.

(Appellant's Brief at 15).  Further, Appellant argues that the record does not demonstrate that he was under arrest during the stop because "no handcuffs were put on him before [the trooper] began to tase [Appellant]." (**_Id._**)  On this basis, Appellant baldly asserts that all prior counsel had no rational basis for failing to challenge the resisting arrest conviction, and their omissions

---

[8] At the preliminary hearing, the court admitted the search warrant into evidence. (**_See_** Preliminary Hearing at 14).  The search warrant, however, was not included with the record for this Court's review.

- 12 -

caused Appellant to suffer prejudice. Appellant concludes that all prior counsel were ineffective for failing to challenge the sufficiency of the evidence supporting the resisting arrest conviction. We disagree.

The Crimes Code defines the offense of resisting arrest as follows:

### § 5104. Resisting arrest or other law enforcement

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S.A. § 5104. "Thus, to be convicted of resisting arrest, the underlying arrest must be lawful." *Commonwealth v. Jackson*, 592 Pa. 232, 236, 924 A.2d 618, 620 (2007).

"In the present context, the lawfulness of an arrest depends on the existence of probable cause to arrest the defendant." *Id.*

Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Snowden*, 330 A.3d 422, 431 (Pa.Super. 2025) (*en banc*) (quoting *Commonwealth v. Martin*, 627 Pa. 623, 648-49, 101 A.3d 706, 721 (2014)).

- 13 -

Instantly, the PCRA court correctly observed that the withdrawal of the DUI charge did not impact the Commonwealth's evidence for the resisting arrest charge:

> [T]he Commonwealth choosing not to pursue the DUI charge does not change the testimony and evidence presented. … Furthermore, the lawful arrest required by the statute is analyzed by the circumstances at the time of the arrest. A later withdrawal of the charge would not change those facts. Here, Trooper Seybert credibly testified that, based on his observations, he believed [Appellant] was intoxicated and arrested him for DUI. Once [Appellant] was told of the arrest, he attempted to get into his vehicle and drive away. [Appellant] resisted officers' attempts to effectuate the arrest and wrestled with officers before fleeing the scene.

(PCRA Court Opinion at 11) (internal citation omitted). Our review of Trooper Seybert's trial testimony confirms the court's findings. (**See** N.T. Trial, 9/27/22, at 34-49). The evidence established that Trooper Seybert attempted to effectuate a legal arrest, Appellant resisted, and Trooper Seybert and backup officers needed to employ substantial force to overcome the resistance.[9] **See** 18 Pa.C.S.A. 5104. Therefore, there is no arguable merit to

_____

[9] Regarding the need for substantial force to overcome Appellant's resistance, Trooper Seybert explained that Appellant first attempted to leave the scene in his vehicle. A backup officer, Corporal Pierce, tried to wrestle Appellant out of the vehicle. At the same time, Trooper Seybert fired two "ineffective" shots from his taser. (N.T. Trial, 9/27/22, at 45). The officers subsequently began "to regain control of [Appellant], get him into custody." (**Id.**) Such control was fleeting. Trooper Seybert "got ahold of [Appellant's] hood, and he slips out of the hooded sweatshirt, leaves me holding the hooded sweatshirt in my hand, and he takes off in an easterly direction across the travel lanes of Route 8 towards the median." (**Id.** at 46). Trooper Seybert chased Appellant, who

*(Footnote Continued Next Page)*

- 14 -

Appellant's claim that all prior counsel were ineffective for failing to challenge the sufficiency of the evidence supporting the resisting arrest conviction. ***See Poplawski, supra***.

In his third issue, Appellant claims that the evidence presented at trial did not prove that he intended to commit a crime inside the Lunnies' residence. Appellant relies on his own, self-serving trial testimony that "he was only asking to use the phone, and that although he did walk into the house, the door was open and nothing was forced." (Appellant's Brief at 16). Further, Appellant contends that he was "confused and emotional from being tased," and "he did not intend to, nor did he, steal anything from the Lunnies." (***Id.***) On this record, Appellant argues that all prior counsel had no rational basis for failing to challenge the burglary conviction, and their omissions caused Appellant to suffer prejudice. Appellant concludes that all prior counsel were ineffective for failing to challenge the sufficiency of the evidence supporting the burglary conviction. We disagree.

The Crimes Code defines burglary, in relevant part, as follows:

> **§ 3502. Burglary**
>
> **(a)  Offense defined.**—A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
>
> \*    \*    \*

was shirtless, for approximately "fifty yards into the median" before the trooper determined that he would not catch up to Appellant. (***Id.*** at 49).

- 15 -

(ii)    enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]

18 Pa.C.S.A. § 3502(a)(1)(ii).

The intent to commit a crime after entry may be inferred from the circumstances surrounding the incident. While this intent may be inferred from actions as well as words, the actions must bear a reasonable relation to the commission of a crime. Once one has entered a private residence by criminal means, we can infer that the person intended a criminal purpose based upon the totality of the circumstances.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1022 (Pa.Super. 2002), *appeal denied*, 569 Pa. 701, 805 A.2d 521 (2002) (internal citations omitted).

Contrary to Appellant's argument, prior counsel raised this sufficiency argument on direct appeal. Moreover, this Court expressly concluded that the Commonwealth presented sufficient evidence to demonstrate Appellant's intent to commit a crime inside the Lunnies' residence:

The evidence at trial showed that [Appellant] ran from police custody at a traffic stop and entered the Lunnies' house unannounced. When Mrs. Lunnie confronted him, [Appellant] refused to leave, told her not to call the police, and struggled to grab her phone. We agree with the trial court that the jury could find that [Appellant] intended to commit a crime when he entered the house. Specifically, the evidence supports a finding that [Appellant] intended to aid his further escape from police. [Appellant] knew that the police were pursuing him when he arrived at the Lunnies' home. Therefore, it is reasonable for the jury to find that [Appellant] intended to continue the offense of escape when he entered.

With respect to [Appellant's] conviction for attempted robbery, the jury could find that [Appellant] intended to

- 16 -

commit a robbery by force when he tried to take Mrs. Lunnie's phone. The jury could believe Mrs. Lunnie's testimony that [Appellant] wrestled her for her phone, and it was not required to accept [Appellant's] testimony that his intentions were innocent.

*Taylor, supra* at 7-8 (record citations and quotation marks omitted). Because counsel raised this sufficiency challenge on direct appeal, Appellant is not entitled to relief on his current ineffectiveness claim. *See Poplawski, supra*.

In his final issue, Appellant contends that the court should have instructed the jury about the concept of "forced entry" as it related to the burglary charge. Specifically, Appellant insists that "[t]he instruction would have cautioned that a forced entry does not immediately imply that an individual is attempting to do something illegal within a structure." (Appellant's Brief at 19). Appellant relies on *Commonwealth v. Wilamowski*, 534 Pa. 373, 633 A.2d 141 (1993), for the proposition that "more than merely breaking a door or window is required to support an inference of intent to commit a crime inside" a residence. (*Id.*) Appellant then posits that "since his [burglary] involved walking into an unlocked house, the jury should have been instructed that they could not infer that his walking in immediately should lead to the conclusion that he intended to commit a crime therein." (*Id.* at 19-20). Appellant argues that trial counsel had no strategic basis for failing to seek this instruction, and Appellant suffered prejudiced due to counsel's omission. Appellant concludes that trial counsel

was ineffective for failing to request this instruction. We disagree.

The following principles apply to our review of a trial court's jury instructions:

> A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error.
>
> \* \* \*
>
> [W]e must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. B. Beatty*, 335 A.3d 1236, 1245 (Pa.Super. 2025), *appeal denied*, ___ Pa. ___, 348 A.3d 1039 (2025) (internal citations omitted).

Instantly, the court provided the jury with the following burglary instruction:

> [Appellant] has been charged with burglary. To find [Appellant] guilty of this offense, you must find that all of the following elements have been proven beyond a reasonable doubt. First, that [Appellant] entered the residence of John and Nancy Lunnie … in Victory Township, Pennsylvania. So, first, did [Appellant] enter that residence? Second, that [Appellant] entered that residence with the intent to commit a crime. So, for it to be burglary, he needs to enter the residence with the intent to commit a crime.

- 18 -

* * *

> So, the third element is that the residence was not open to the public at the time [Appellant] entered the—fourth, that [Appellant] did not have permission or lawful authority to enter that residence.

(N.T. Trial, 9/28/22, at 122-23).

Here, the court's instruction accurately presented the law for the jury's consideration. **See B. Beatty, supra**. Although the instruction did not address the concept of forced entry, the PCRA correctly noted that "forcible entry is not an element of burglary. Presenting the jury with an instruction requiring forcible entry … would mislead the jury." (PCRA Court Opinion at 10). We agree with this conclusion and add that Appellant's own testimony established that a forced entry did not occur:

> [COUNSEL:]      Did you have to—did you have to break the door or did it just open?
>
> [APPELLANT:]      No. The door was just open.

(N.T. Trial, 9/28/22, at 20). Because Appellant's testimony conceded that a forced entry did not occur, a jury instruction regarding this concept would have palpably misled the jury. **See B. Beatty, supra**. We conclude that trial counsel was not ineffective for failing to request this instruction, and Appellant is not entitled to relief on his final claim. **See Poplawski, supra**. Accordingly, we affirm the order dismissing Appellant's PCRA petition.

Order affirmed.

- 19 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 03/17/2026